1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7
8
9
10
11
12
13
14
15
16

| | |
|---|---|
| G.G., by and through his grandmother and guardian, A.G.; A.M., by and through her parent and guardian, L.M.; and DISABILITY RIGHTS WASHINGTON, a nonprofit membership organization for the federally mandated Protection and Advocacy Systems,<br><br>                    Plaintiffs,<br><br>    v.<br><br>JILMA MENESES, in her official capacity as Acting Secretary of the Washington State Department of Social and Health Services; and SUSAN BIRCH, in her official capacity as Director of the Washington State Health Care Authority,<br><br>                    Defendants. | No.<br><br><br><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

17

## I.      OVERVIEW

18

1.      The Rainier School is a large state-run, residential institution for people with

19

intellectual and developmental disabilities in rural Pierce County.  It is a dangerous place to live

20

with an extensive history of failing to provide for the health and safety of its residents. The

21

mistreatment and neglect within its walls have maimed, hospitalized, and killed residents. It has

22

repeatedly failed to provide adequate medical and behavioral healthcare, and left residents

23

without the supports and supervision necessary to complete basic daily tasks and build additional

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 1

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

1   skills towards more independent living, which is the sole reason residents are placed in Rainier

2   School to begin with.

3       2.      Plaintiffs G.G. and A.M. are adults with developmental disabilities. Each needs

4   intensive long-term supports and each is or recently has been a resident of Rainier School.

5   Plaintiff Disability Rights Washington is the federally mandated protection and advocacy system

6   for Washington. All Washingtonians with disabilities, including all current, past, and potential

7   future residents of Rainier School, are its federally mandated constituents.

8       3.      Defendants have repeatedly and consistently claimed that they are able to safely

9   provide required intensive services and care for residents at Rainier School but have failed to do

10  so for years. The state's own oversight of Rainier School has repeatedly documented the

11  facility's failures and dangerous conditions that Defendants have failed to correct.  Defendants'

12  actions have seriously physically and psychologically harmed the two named plaintiffs and

13  Plaintiff Disability Rights Washington's other constituents who live at this substandard facility.

14      4.      Defendants have repeatedly and consistently failed to respond adequately to

15  incidents of serious harm, including death and serious bodily injury, suffered by residents of

16  Rainier School. Defendants have failed to respond adequately to Rainier School's inability to

17  provide necessary medical and behavioral health supports to meet resident needs. And

18  Defendants have failed to respond adequately to Rainier School's inability to provide adequate

19  staffing to meet the residents' supervisory and habilitative support needs.

20      5.      Despite knowing for years that Rainier School is a substandard and dangerous

21  facility, Defendants continued to permit Rainier School to operate, admit, and serve individuals

22  with intellectual, developmental, and psychiatric disabilities who have intensive support needs.

23

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 2

This has placed residents at significant risk of harm and resulted in actual ongoing serious harm to the individuals that live there.

6.     Defendants' willful failure to take the steps necessary to prevent current, former, and future residents of Rainier School from suffering serious harm violates the named Plaintiffs' and DRW's constituents' rights under the Fourteenth Amendment to the U.S. Constitution ("USCA"), U.S.C.A CONST. AMEND. XIV, § 1, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*, and the Washington Law Against Discrimination ("WLAD"), WASH. REV. CODE § 49.60 *et seq.*

7.     This litigation seeks injunctive and declaratory relief to require Defendants to provide for the physical safety and adequate and appropriate medical and behavioral healthcare of current and future residents of Rainier School. Without injunctive and declaratory relief, Rainier School will continue to admit and serve individuals who need intensive support services, medical and behavioral healthcare and they will all be at significant risk of suffering serious, irreparable, psychological and bodily harm, including serious injury or death.

## II.     PARTIES

8.     ***Plaintiff G.G.***  Plaintiff G.G. is a twenty-year-old man with developmental and psychiatric disabilities.  He is a client of the Developmental Disabilities Administration (hereinafter "DDA") and a former Rainier School resident.  Plaintiff G.G. was admitted to Rainier School in July 2020 after it was determined that there was no community-based service option available to him. Plaintiff G.G. experienced a significant increase in his behavioral health symptoms while he was in Rainier School's custodial care. Rainier School failed to provide him with the necessary care and supports to meet his medically assessed needs. Rainier School

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

1   repeatedly utilized physical and chemical restraints in response to Plaintiff G.G.'s behavioral

2   health needs.

3        Rainier School terminated services to Plaintiff G.G. after he was transported to a local

4   hospital emergency room during a behavioral health crisis.  Plaintiff G.G. remains

5   institutionalized in a hospital setting without a community-based option for future care. Plaintiff

6   G.G. is at risk of being readmitted to Rainier School upon discharge from the hospital.

7        9.      *Plaintiff A.M.* Plaintiff A.M. is a forty-six-year-old woman with developmental

8   and psychiatric disabilities.  She is a client of DDA and a current Rainier School resident.

9   Plaintiff A.M. was admitted to Rainier School in February 2022 after DDA determined that there

10  was no other service option available to her. Rainier School has failed to provide her with the

11  necessary care and supports to meet her assessed needs. Plaintiff A.M. lives in daily fear of

12  suffering serious psychological and bodily injury at Rainier School. Defendants have not

13  provided Plaintiff A.M. with any alternative options for care that meet her assessed needs.

14       10.     *Plaintiff Disability Rights Washington.* Plaintiff Disability Rights Washington is

15  a nonprofit corporation duly organized under the laws of the State of Washington. It is the

16  statewide protection and advocacy system designated by the Governor of the State of

17  Washington to protect and advocate for the legal and civil rights of those residents of this state

18  who have disabilities, pursuant to the Developmental Disabilities (DD) Act, 42 U.S.C. §§ 15041-

19  45, the Protection and Advocacy of Individuals with Mental Illness (PAIMI) Act, 42 U.S.C. §§

20  10801-51 and WASH. REV. CODE 71A.10.080(2).  Disability Rights Washington is governed by a

21  board of directors comprised of a majority of people with disabilities and super majority of

22  people with disabilities and their family members. This board is advised by two advisory

23  councils, the Disability Advisory Council and the statutorily mandated Mental Health Advisory

1   Council, also primarily comprised of a majority of people with disabilities and super majority of

2   people with disabilities and their family members. Disability Rights Washington's constituents

3   include all people with disabilities across Washington, including, but not limited to, Plaintiffs

4   G.G., A.M., and all other Washington residents with developmental and intellectual disabilities

5   and related conditions who have received, are receiving, or will receive services in Rainier

6   School.

7       11.    ***Defendant Jilma Meneses.***  Defendant Jilma Meneses is the Acting Secretary of

8   the Washington Department of Social and Health Services (DSHS), the state agency that

9   includes DDA.  DSHS, through DDA, is responsible for operating all of the RHCs, including

10  Rainier School.  DSHS, through DDA, is responsible for administering services and supports, in

11  both facility and community-based settings, to eligible individuals with developmental

12  disabilities in Washington State. Ms. Meneses is sued in her official capacity only.  All alleged

13  acts by Ms. Meneses, DSHS and DDA were taken under color of state law.

14      12.    ***Defendant Susan Birch.***  Defendant Susan Birch is the Director of the

15  Washington State Health Care Authority (HCA).  HCA is the designated single state agency for

16  Washington's Medicaid programs.  Ms. Birch is responsible for ensuring that the Medicaid

17  program is administered in a manner consistent with all state and federal laws.  Ms. Birch is

18  responsible for ensuring that the required enforcement actions and sanctions are imposed when

19  facilities, including Intermediate Care Facilities (ICFs), like Rainier School, are out of

20  compliance with requirements to participate in the Federal Medicaid Program. Rainier School is

21  operated with Medicaid money and as such is part of the Medicaid program for which Ms. Birch

22  is responsible. Ms. Birch is sued in her official capacity only.  All alleged acts by Ms. Birch and

23  HCA were taken under color of state law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 5

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

## III.   JURISDICTION AND VENUE

13.   Jurisdiction of this Court arises under 28 U.S.C. § 1331 because this action arises under the laws of the United States, 28 U.S.C. § 1343(3) and (4), which confer on the federal district courts original jurisdiction over all claims asserted pursuant to 42 U.S.C. § 1983 to redress deprivations of rights, privileges or immunities guaranteed by Acts of Congress and the United States Constitution, and 28 U.S.C. § 1367(a) which confers on the federal district courts supplemental jurisdiction over all claims that are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy.

14.   Venue is proper pursuant to 28 U.S.C. § 1391(b).  A substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Western District of Washington and Defendants may be found here.

## IV.   LEGAL FRAMEWORK

### A.   The Fourteenth Amendment to the United States Constitution

15.   Residents of state-run facilities have a constitutional right to "conditions of reasonable care and safety," *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982) and to be reasonably protected from harm. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). When the state holds someone in its custody, through imprisonment, institutionalization, or another similar restraint of personal liberty, a 'special relationship' is created triggering an affirmative duty to protect that person, enforceable through the Fourteenth Amendment's Due Process Clause. *Campbell v. State of Washington Dep't of Social & Health Servs.*, 671 F.3d 837, 842 (9th Cir., 2011) (citing *DeShaney*, 489 U.S. at 190).  The existence of a 'special relationship' is not dependent on the labeling of a person's confinement as involuntary,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 6

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

but rather on whether the circumstances of the confinement amount to a restraint of their personal liberty. *See Campbell,* 671 F.3d at 843.

16.     Rights secured by the Fourteenth Amendment due process clause are violated when the state restrains an individual's liberty such that they are unable to care for themselves and, simultaneously, the state fails to provide proper medical care and reasonable safety. *See DeShaney*, 489 U.S. at 200. State actors become liable for violations "when the decision made by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323.

17.     Further, the state is liable for violating the due process rights of residents when harm to residents' safety and bodily security is directly caused by state employees acting with deliberate indifference. *Triplett v. Washington State Dep't. of Social and Health Servs.*, 193 Wash. App. 497, 521 (2016). Voluntary commitment in a residential institution does not make a person ineligible to assert a claim for violation of due process rights based on direct state action. *Triplett*, 193 Wash. App at 526; *See also Torisky v. Schweiker,* 446 F.3d 438, 443 (3rd Cir.2006). A person who voluntarily submitted to state custody or care may demonstrate a violation of substantive due process committed by the state with the requisite recklessness or deliberate indifference. *Triplett*, 193 Wash. App at 522; *See also Stoneking v. Bradford Area School Dist.,* 882 F.2d 720, 724-5 (3rd Cir. 1989)*; Fiakowski v Greenwich Home for Children, Inc.,* 921 F.2d 459, 466 (3rd Cir. 1990)*.*

**B.   The Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act**

18.     Title II of the Americans with Disabilities Act (ADA), 42 U.S.C.  §§ 12131-12134, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, are designed to ensure that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 7

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

individuals with disabilities are not denied the benefits of public services or subjected to discrimination by public entities.

19.     The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1). In enacting the ADA, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[.]" 42 U.S.C. § 12101(a)(2).

20.     Congress further recognized that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, … failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities; [and] the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[.]" 42 U.S.C. § 12101(a)(5)(7).

21.     Title II of the ADA applies to public entities, including state or local governments and any departments, agencies, or other instrumentalities of state or local governments. 42 U.S.C. §§ 12131, 12132. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

22.     Title II's implementing regulations prohibit public entities from utilizing "criteria or methods of administration" that "have the effect of subjecting qualified individuals with

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  •  Fax: (206) 957-0729

disabilities to discrimination," or "[t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities[.]" 28 C.F.R. § 35.130(b)(3)(i), (ii).

23.     Like the ADA, the Rehabilitation Act prohibits discrimination against people with disabilities under any program or activity that receives federal financial assistance. 29 U.S.C. § 794(a). The Rehabilitation Act's implementing regulations prohibit recipients of federal financial assistance from utilizing "criteria or methods of administration" that have the effect of subjecting qualified persons with disabilities to discrimination on the basis of disability, or that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to persons with disabilities. 45 C.F.R. § 41.51(b)(3)(i)-(ii); 45 C.F.R. § 84.4(b)(4)(i)-(ii).

**C.   Washington Law Against Discrimination**

24.     The Washington Law Against Discrimination (WLAD), WASH. REV. CODE § 49.60, was designed to discourage and eliminate discrimination in Washington State. When enacting WLAD, the legislature declared that "practices of discrimination against any of its inhabitants are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." WASH. REV. CODE § 49.60.010.

25.     WLAD is intended to offer broad protection from discrimination. In order to effectuate its purpose of eliminating discrimination in Washington State, the Washington State legislature has directed that WLAD be construed liberally. *See* WASH. REV. CODE § 49.60.020.

26.     WLAD specifically prohibits discrimination on the basis of "the presence of any sensory, mental, or physical disability." WASH. REV. CODE § 49.60.010. Further, WLAD

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 9

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

provides that the right to be free of discrimination based on any sensory, mental, or physical disability is a civil right. WASH. REV. CODE § 49.60.030; *See also Darrin v. Gould*, 85 Wash. 2d 859, 870 (1975).

27.     In 2007, the Washington State legislature adopted a definition of disability that is broader and more inclusive than the ADA thereby expanding protection from discrimination on the basis of disability in Washington State.  WASH. REV. CODE § 49.60.040(7)(a)-(c). In doing so, the legislature declared "that the Law Against Discrimination affords to state residents protections that are wholly independent of those afforded by the federal Americans with Disabilities Act of 1990, and that the law against discrimination has provided such protections for many years prior to passage of the federal act." 2007 Wash. Sess. Laws 1387.

## V.     BACKGROUND ON REGULATION OF RESIDENTIAL HABILITATION CENTERS

28.     The State of Washington has established four Residential Habilitation Centers (RHCs) in Washington State to serve individuals with developmental disabilities. RHCs are large, residential institutional settings that only serve individuals with developmental disabilities or related conditions.

29.     Defendant Jilma Meneses operates the RHCs through the Developmental Disabilities Administration (DDA).

30.     The purpose of the RHCs is "[t]o provide for those persons who are exceptional in their needs for care, treatment, and education by reason of developmental disabilities…and to ensure a comprehensive program for the education, guidance, care, treatment, and rehabilitation of all persons admitted to residential habilitation centers." WASH. REV. CODE § 71A.20.010(1).

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

31.     RHCs historically served people of all ages, including very young children, but the Washington State Legislature has since limited the use of RHCs to adults. RHCs are currently prohibited from serving people under sixteen years of age and can only serve people under twenty-one when "there are no service options available in the community to appropriately meet the needs of the individual. Such admission is limited to the provision of short-term respite or crisis stabilization services." WASH. REV. CODE § 71A.20.010(2).

32.     The name RHC is a state designation for the overall facility, and portions of each RHC may be licensed in one of two ways, Intermediate Care Facility for Individuals with Intellectual and Developmental Disabilities (ICF) or skilled Nursing Facility (NF) licenses.

33.     Both ICF and NF licenses are Medicaid State Plan services for which Defendant Susan Birch is responsible.

34.     ICF and NF services must be certified to be funded as Medicaid State Plan services.

35.     To maintain certification, the RHCs must comply with federal conditions of participation for ICFs and NFs that outline the standards for minimally adequate care and treatment of residents.

36.     State survey agencies must survey ICFs every fifteen months for compliance with applicable federal conditions of participation.

37.     When the state survey agency finds that an ICF is out of compliance with a condition of participation, the state Medicaid agency may put the facility on a Denial of Payment for New Admissions (DPNA) in lieu of terminating the facility's certification.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

38.     The DPNA means that the ICF cannot receive Medicaid funds for any new resident admissions. The DPNA will continue for 11 months to provide the facility time to correct deficiencies and come back into compliance.

39.     If compliance is not achieved within the 11-month DPNA timeline, the state Medicaid agency must terminate the facility's certification. *See* 42 CFR § 442.118-119.

40.     In addition to terminating for failure to correct a deficiency in a condition of participation, the State Medicaid Agency must terminate a facility's certification if the deficiencies pose "immediate jeopardy" to the residents' health and safety. 42 CFR § 442.117(a)(2).

41.     Federal regulations define "immediate jeopardy" as "a situation in which immediate corrective action is necessary because the provider's noncompliance with one or more requirements of participation or conditions of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to an individual receiving care in a facility." 42 CFR § 442.2.

## VI.     FACTUAL ALLEGATIONS

**A.     Rainier School is an institution established to provide 24/7 residential, medical, behavioral health, habilitative, and protective supervision services to individuals with developmental disabilities who have complex needs**

42.     Rainier School is one of four state-operated RHCs.

43.     Rainier School is located in rural, eastern Pierce County in Buckley, Washington. It provides 24-hour residential care to approximately 120 residents.

44.     Rainier School claims that it provides individualized services to its residents and that the following services are available at the institution:

a.     Medical, dental, and nursing care;

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

b.   Social and psychological services;

c.   Occupational therapy, physical therapy and speech therapy evaluations, treatment, and adaptive equipment;

d.   Vocational training and employment;

e.   Recreation facilities; and

f.   Nutrition and dietary services, including modified textures and therapeutic diets.

45.   Rainer School currently serves approximately 120 individuals in two parts of the facility that are licensed as ICFs, Program Area Team (PAT) E and PAT C.   Rainier School is also providing residential services to up to 9 individuals in a cottage that is part of Rainier School's campus and is staffed by Rainier School employees. This cottage is not certified as an ICF and not otherwise licensed by the State as a long-term care setting recognized by any state or federal statutory scheme.  The cottage is known as "Klamath Cottage."

46.   Rainier School is the only RHC in Washington that serves residents in a setting like Klamath Cottage that is not certified and regulated as part of a NF or ICF.

47.   Residents of Rainier School are "exceptional in their needs for care, treatment, and education by reason of developmental disability[y]." WASH. REV. CODE § 71A.20.010(1).

48.   Individuals are placed by DDA at Rainier School due to the complexity of their support needs.

49.   Many residents of Rainier School entered the facility because there were no other available service-options to meet their assessed needs.

50.   As of June 22, 2022, the resident population of the certified ICFs at Rainier School, PAT C and PAT E, included the following:

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 13

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

a. Eleven (11) residents under 21 have been admitted since January 1, 2020;

b. Forty-seven (47) residents require a one-to-one direct care staff as part of their treatment plan; and

c. Eighty-six (86) residents have a co-occurring behavioral health diagnosis, such as mental illness or substance use disorder, in addition to their underlying developmental disability or related condition.

51. Once an individual is admitted to Rainer School, DSHS assumes responsibility for their residential care, medical and therapeutic treatment, protective supervision, and safety.

52. Washington law provides that the Secretary of DSHS, "<u>shall have custody</u> of all residents of the residential habilitation centers <u>and control</u> of the medical, educational, therapeutic, and dietetic treatment of all residents…." (emphasis added) WASH. REV. CODE § 71A.20.050(2).

53. Once admitted, residents of Rainier School do not have an absolute right to leave the facility. The Secretary of DSHS is able to hold a resident who desires to leave Rainier School at the facility against their will. WASH. REV. CODE § 71A.20.140(1).

54. Many residents of Rainier School have indicated that they do not want to live at Rainier School for long-term care:

a. All residents of Klamath Cottage are admitted for emergency short-term respite.

b. Twenty-three (23) residents of the ICFs are on "short term stays."

c. Approximately 40 residents are on the Roads to Community Living (RCL) caseload.  RCL is a Medicaid program for people interested in moving out of the institution and into a community placement.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 14

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

**B.   Inadequate Staffing at Rainier School risks harm to residents**

55.     In 2021, a total of 141 direct care staff quit their positions at Rainier School, and, between January and June 22 of this year, another 23 direct care staff have quit their positions at Rainier School.

56.     As of June 22, 2022, Rainier School had 150 current vacancies for direct care staff.

57.     In the first 5 months of the calendar year, the staff providing direct care to residents at Rainier School billed approximately 40,000 hours of overtime:  8,225.4 hours in January 2022; 7,303.6 hours in February 2022; 7,134.5 hours in March 2022; 7,751 hours in April 2022; and 9,023.5 hours in May 2022.

58.     In addition to inadequate direct care staffing, Rainier School does not employ sufficient professional staff to adequately provide for the behavioral healthcare needs of its current residents.

59.     As of June 22, 2022, Rainier School, a facility that provides residential care to 120 people who are "exceptional in their needs for care, treatment, and education by reason of developmental disabilities" and approximately 86 of which also have co-occurring behavioral health diagnoses, employed only one licensed psychologist.

**C.   Rainier School has an extensive and well-known history of failure to meet federal regulatory requirements for health and safety**

60.     State regulators have determined repeatedly over the course of multiple years that Rainier School is failing to meet federal minimum requirements for health and safety. On multiple occasions regulators have determined that Rainier School's failures have put residents in immediate risk of serious harm.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

61.     After several years of failing to correct deficiencies identified by state regulators,

DSHS contracted with Westcare Management, Inc. in 2018 to conduct an independent Root

Cause Analysis (RCA) and Corrective Action Plan (CAP) to identify and correct the deficiencies

jeopardizing Rainier School's Medicaid funding.

62.     The Westcare report described the "organizational chaos" at Rainier School as

follows:

> Upon arrival, we observed that a written policy outlining the responsibilities of
> each level of the governing body could not be produced. What we observed were
> many instances of organizational chaos; constant and many times contradictory
> directives from DDA, confusion of roles and weak leadership at Rainier, confusion
> about the chain-of-command between DDA and Rainier including within PAT E
> itself, a general lack of responsibility for decision-making from any level of
> governing body, and PAT E staff who were frozen, cue dependent and frustrated.

Westcare Healthcare Management, Report to DSHS, 4 (2018). A true and correct copy of the

Westcare report is attached hereto as Exhibit A.

63.     At that time, Rainier School had three ICF licenses, PAT A, PAT C, and PAT E.

64.     In 2019, Rainier School PAT A was decertified by federal and state regulators and

closed due to its failure to comply with federal conditions of participation that provide the

federally imposed minimum standards for effective and appropriate treatment.

65.     DSHS moved 84 individuals with developmental disabilities who were residents

of PAT A to other facilities and community-based settings that were licensed or certified to

receive Medicaid funding and could meet their individualized service needs. Five of these

individuals were not relocated outside of Rainier School, they were "moved" to PAT C or PAT E

at Rainier School.

66.     PAT C, one of the two ICFs that remains at Rainier School today, is home to

approximately 60 individuals with developmental disabilities.  PAT C is currently on DPNA

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 16

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

1    status and is out of compliance with four federal conditions of participation for ICFs that receive

2    federal Medicaid funds. In brief, regulators have made the following findings against PAT C

3    since January 2020:

   a.   In January 2020, state regulators conducting an annual survey found PAT C

        out of compliance with one condition of participation for failing to meet

        minimum standards for Client Protections.

   b.   In February 2020, state surveyors issued an Immediate Jeopardy after a PAT

        C resident disappeared from the facility. The surveyors described how the

        failures of Rainier School caused this disappearance as follows:

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>CENTERS FOR MEDICARE & MEDICAID SERVICES | | | PRINTED: 03/24/2020<br>FORM APPROVED<br>OMB NO. 0938-0391 |
|---|---|---|---|
| STATEMENT OF DEFICIENCIES<br>AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA<br>IDENTIFICATION NUMBER:<br><br>50G047 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br><br>B. WING _____ | (X3) DATE SURVEY<br>COMPLETED<br><br>C<br>02/05/2020 |
| NAME OF PROVIDER OR SUPPLIER<br><br>**RAINIER SCHOOL PAT C** | | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**RYAN ROAD**<br>**BUCKLEY, WA  98321** | |

| (X4) ID<br>PREFIX<br>TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(EACH DEFICIENCY MUST BE PRECEDED BY FULL<br>REGULATORY OR LSC IDENTIFYING INFORMATION) | ID<br>PREFIX<br>TAG | PROVIDER'S PLAN OF CORRECTION<br>(EACH CORRECTIVE ACTION SHOULD BE<br>CROSS-REFERENCED TO THE APPROPRIATE<br>DEFICIENCY) | (X5)<br>COMPLETION<br>DATE |
|---|---|---|---|---|
| W 104 | Continued From page 1<br>#9).  The facility failed to create a plan and design an environment for 2015 Quinault Court House to ensure staff could supervise, protect, and care for every Client. These failures resulted in DCS having to make choices about what supervision, protection, or care to provide to a Client at the expense of the other Clients. These failures resulted in Client #1 going missing and not being found. | W 104 | | |

18    Residential Care Servs., FORM CMS-2567: Rainier School PAT C, 2 (Feb. 5, 2020)**.** A true and

19    correct copy of this form is attached hereto as Exhibit B.

   c.   In February 2020, state surveyors conducted a re-inspection to determine if

        Rainier School corrected the causes of the Immediate Jeopardy finding issued

        earlier that month. They found that Rainier had failed to correct the deficiencies

        and that residents remained at immediate risk of serious harm or death.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 17

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

d.   In July 2020, state surveyors conducted another re-inspection and did not lift the Immediate Jeopardy finding again. Rainier School had still failed to correct the causes of the Immediate Jeopardy finding initially issued 6 months earlier and residents remained at immediate risk of serious harm or death.

e.   In October 2020, state surveyors found another Immediate Jeopardy after a different resident who required protective supervision left his house alone on three different occasions. The surveyors describe how the lack of sufficient staff caused immediate harm or risk of harm as follows:

| DEPARTMENT OF HEALTH AND HUMAN SERVICES CENTERS FOR MEDICARE & MEDICAID SERVICES | | | PRINTED: 11/19/2020 FORM APPROVED OMB NO. 0938-0391 |
|---|---|---|---|
| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: **50G047** | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C **10/23/2020** |
| NAME OF PROVIDER OR SUPPLIER **RAINIER SCHOOL PAT C** | | STREET ADDRESS, CITY, STATE, ZIP CODE **RYAN ROAD BUCKLEY, WA  98321** | |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| W 104 | Continued From page 1 when the house was working under their identified basic staffing level. Client #1 left his residence (1040 QC) twice in one day when there was not the assigned number of staff at the house, and again two days later when staffing was below their basic staffing level. This failure placed Client #1 at risk for injury, and prevented the facility from acting on the lack of sufficient staffing levels, putting all the Clients at 1040 QC at risk for not having their needs met. | W 104 | | |

Residential Care Servs., FORM CMS-2567: Rainier School PAT C, 2 (Oct. 23, 2020). A true and correct copy of this form is attached hereto as Exhibit C.

f.   In May 2021, the standard annual recertification survey was conducted and found that PAT C was out of compliance with four conditions of participation for failing to meet minimum standards for Governing Body and Management; Client Protections; Health Care Services; and Active Treatment Services.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 18

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

g.  In July 2021, the state survey team conducted a resurvey to determine whether

Rainier School had fixed the four areas of noncompliance identified in May

2021.  They determined that PAT C did not correct the causes of the citations

and it remained out of compliance.

h.  In August 2021, state surveyors placed PAT C on DPNA status.

i.  In April 2022, state surveyors came out a second time to resurvey and found

that PAT C remained out of compliance.

j.  In June 2022, a third resurvey found that the serious deficiencies identified 13

months earlier remained and, additionally, state surveyors issued a new

Immediate Jeopardy finding due to Rainier School's failure to ensure that staff

followed administrative code, facility policies, and standard nursing practices

related to a resident's eye infection. Surveyors described how Rainier

School's failures caused preventable harm as follows:

On 06/01/2022 Staff J, Advanced Registered
Nurse Practitioner, assessed Client 5's left eye
and a decided to send Client 5 to the hospital.

The facility investigation concluded: the incident
could have possibly been prevented if the initial
left eye infection had been treated until healed;
Client 5 had not received appropriate medical
care prior to the transfer to the hospital; no
nursing orders were in place to guide medication
and treatment for LPNs or direct care staff

Locator website.

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: KFRI14          Facility ID: WA40090          If continuation sheet Page  79 of 83

Residential Care Servs., FORM CMS-2567: Rainier School PAT C, 79-80 (June 29, 2022). A

true and correct copy of this form is attached hereto as Exhibit D.

67.     PAT E, the other ICF currently licensed on the Rainier School campus, houses

approximately 60 individuals with developmental disabilities. PAT E is currently on DPNA and

is out of compliance with one federal condition of participation for ICFs that receive federal

Medicaid funds. In brief, the state survey agency has made the following findings against PAT E since November 2021:

   a.   In November 2021, state surveyors found PAT E out of compliance for its failure to meet minimum requirements for Active Treatment Services.

   b.   In January 2022, state surveyors issued an Immediate Jeopardy finding after a PAT E resident choked to death. Surveyors described how Rainier School's failure to train staff resulted in the death of one resident and risk of harm to others as follows:

| W 122 | Continued From page 1 | W 122 |
|---|---|---|
| | Therefore the facility must | |
| | This CONDITION is not met as evidenced by: | |
| | Based on record review and interview, the facility failed to protect 1 of 1 Sample Clients (Client 1) from choking. Client 1 had known, long-standing behaviors related to getting and eating food unsupervised that placed them at risk of choking. The facility did not provide training or supervision to prevent the behaviors that resulted in the choking incident. The facility did not thoroughly investigate the incident to determine why it happened or if it could have been prevented. This failure resulted in the death of Client 1 and puts all Clients with behaviors that are potentially harmful or life threatening at risk when facility investigations do not determine the "why" of the incident, the appropriateness of the facility's plan (not just if the plan in place was implemented correctly) for the Client, and all other aspects and circumstances of the incident in order to prevent recurrence. | |

Residential Care Servs., FORM CMS-2567: Rainier School PAT E, 2 (Jan. 12, 2022)**.** A true and correct copy of this form is attached hereto as Exhibit E.

   c.   In February 2022, state surveyors returned to resurvey, found that PAT E remains out of compliance and placed PAT E on DPNA status for 11 months.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 20

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

**D.   Rainier School fails to correct deficient practices that harm or create risk of harm to residents**

68.   The state survey agency receives and reviews drafts of corrective action plans from Rainier School related to the numerous Immediate Jeopardy findings and noncompliance with conditions of participation listed above.

69.   On multiple occasions, the state survey agency has provided extensive technical assistance and feedback to Rainier School on its corrective action plan drafts.

70.   On multiple occasions, even after providing Rainier School with extensive technical assistance and feedback, the state survey agency has rejected corrective action plans proposed by Rainier School because the plans are insufficient to correct the harm or risk of harm to residents.

**E.   DSHS's lack of adequate oversight of Klamath Cottage poses risks to residents**

71.   Klamath Cottage was established at Rainier School in April 2020 in response to the COVID-19 pandemic.

72.   Klamath Cottage is staffed by Rainier School employees, utilizes Rainier School services, such as the central kitchen and medical clinics, and is overseen by Rainier School's administration.

73.   DSHS stated Klamath Cottage was made available to (1) move DDA clients who were residing in acute care hospitals without a medical need away from exposure to COVID-19, and (2) to free up hospital capacity to absorb COVID-19 patients.

74.   When established, Klamath Cottage was not part of either of the certified ICFs at Rainier School and DSHS did not establish any other form of long-term care setting licensure for the cottage.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 21

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

75.     The state survey agency and state Medicaid agency do not have jurisdiction over care settings that are not licensed or certified to provide Medicaid services.

76.     As such, Residents of Klamath cottage are not legally entitled to the same state surveyor oversight and level of services outlined by ICF regulations as residents of Rainier School who live in the ICF.

77.     In October of 2020, DSHS promulgated emergency administrative regulations to establish Klamath Cottage as a new state-funded service for use during publicly declared emergencies.

78.     The rules identify the service as "emergency transitional respite services." The rules authorize DDA to provide the service to clients who are "currently hospitalized without medical need during a declared state of emergency."  WAC 388-829Z-011.

79.     In 2021, Rainier School expanded the Klamath Cottage service to an additional cottage on the campus, Naches Cottage.

80.     DSHS has not put forward a plan for how to close or resolve services provided to residents at Klamath Cottage, despite its underregulated status.

81.     As of July 1, 2022, six individuals reside at Klamath Cottage.  Three residents of Klamath Cottage have resided there for over a year.

**F.   Defendants do not provide effective oversight to Rainier School and continue to use Rainier School to provide services and admit new residents despite knowledge of its dangerousness**

82.     Defendants know of the dangerous, systemic deficiencies at Rainier School, including recurring incidents of death and serious harm to residents.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 22

83.     Defendants know that Rainier School repeatedly submits insufficient corrective action plans to the state survey agency and that significant technical assistance is required from the state survey agency on Rainier School's corrective action plans.

84.     Defendants know of the persistent staffing shortage at Rainier School.

85.     Defendants know that the state survey agency has recommended termination of certification for both PAT C and PAT E.

86.     Defendants know Klamath Cottage is not a certified or licensed long-term care facility subject to federal and state regulatory oversight.

87.     Defendant Birch continues to provide Medicaid funding to PAT C and PAT E.

88.     Defendant Meneses continues to use Rainier School to serve individuals with developmental disabilities with complex support needs and continues to refer and place new individuals at Rainier School for custodial care and services.

89.     Defendants do not have a system of services for individuals with developmental disabilities that effectively provides crisis stabilization and behavior support services such that DDA clients can avoid admission to Rainier School.

**G.   Named Plaintiff Factual Allegations**

90.     **Plaintiff G.G**. was admitted to Rainier School in 2020, when he was 18 years old.

91.     Plaintiff G.G has lived in 24-hour residential care since he was sixteen years old.

92.     In 2020, Plaintiff GG aged out of an out-of-state residential program and was transferred back to Washington State.

93.     Plaintiff G.G. was admitted to Rainier School on July 22, 2020, after DDA determined that there was no available community-based option to meet his needs.

94.     Plaintiff G.G. was admitted to Rainier School for a short-term stay.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 23

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

95.     Plaintiff G.G. is assessed to need 1:1 protective supervision 24/7 and is known to have elopement behavior.

96.     At the time of his admission, Rainier School PAT C had an active, unresolved Immediate Jeopardy finding related to the high risk of harm to residents with significant behavioral health needs and the need for one-on-one protective supervision. Specifically, the Immediate Jeopardy citation was related to the high risk of harm for individuals with elopement behavior.

97.     Despite knowing Rainier School PAT C was currently dangerous for people with 1:1 supervision support needs and elopement behavior, Defendants admitted Plaintiff G.G. to Rainier School PAT C.

98.     Rainier School PAT C is required by federal law to provide active treatment and vocational training services to the people it serves.

99.     Rainier School failed to provide adequate active treatment and vocational services to Plaintiff G.G. Plaintiff G.G. often declined to attend the vocational training because he was "bored."  In response, Rainier School reduced his workdays from 5 days per week to 3 days per week.

100.     Upon his admission, it was known that Plaintiff G.G. could be physically and verbally aggressive and this continued throughout his residence at Rainier School. Rainier School failed to provide sufficient staff and services to Plaintiff G.G to supervise, manage, and de-escalate incidents when he was physically or verbally aggressive. Instead, in response to incidents of aggression, Plaintiff G.G. was physically restrained by Rainier School staff on multiple occasions. Mechanical restraints used on G.G.  included waist-to-wrist restraints and ankle cuffs. Under DDA policy, positive behavior support, not physical or mechanical restraints,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 24

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

, are to be used as a primary method of working with clients. *See* DDA Policy 5.22. Plaintiff G.G.'s Rainier School service plan documents that in November 2020 the frequency of use of physical and mechanical restraints required an "exception to policy".

101.     In addition to relying on physical and mechanical restraints as a behavior intervention, Rainier School relied on pharmacological intervention to manage Plaintiff G.G.'s behavior. In response to Plaintiff G.G.'s behavior, Plaintiff G.G.'s psychiatric medications were increased on multiple occasions, including in May 2021, September 2021, October 2021, November 2021, January 2022.

102.     On January 24, 2022, Plaintiff G.G. threatened suicide. Rainier School staff responded by calling 911 to have him transported by ambulance to a local medical hospital for emergency psychiatric evaluation. Plaintiff G.G.'s treatment providers in the hospital emergency department assessed him as calm on arrival and appropriate for discharge back to Rainier School. Hospital records document that Plaintiff G.G. told hospital staff that he had engaged in aggressive behaviors at Rainier School because he was bored and was frustrated by his boredom.

103.     Rainier School declined to coordinate discharge and transport back to Rainier School. On February 2, 2022, Rainier School terminated Plaintiff G.G.'s "short-term stay" at the facility.

104.     As a result of Rainier School's termination of services, Plaintiff G.G. was stuck in the local medical hospital with no discharge location for over four months.  His psychiatric treatment providers during this time documented concern about the "significant" and "excessive" amount of psychotropic medication prescribed while Plaintiff G.G. was a resident of Rainier School. His treatment providers at the hospital documented the potential "activating" nature of the medication and possible side effects as akathisia (restlessness), anxiety, and mood instability.

105.    Plaintiff G.G.  remains institutionalized in a restrictive hospital setting without a community-based option for future care. He is at risk of being readmitted to Rainier School upon discharge.

106.    Defendants' actions, inactions, policies, patterns, customs, and practices have violated and continue to violate G.G.'s constitutional and statutory rights.

107.    Defendants have harmed G.G. by placing him at Rainier School despite serious known and relevant deficiencies and by failing to provide alternative service-options that could meet his assessed needs and provide effective protective supervision and safety.

108.    **Plaintiff A.M.** is 45 years old and has lived in 24/7 residential care since she was a teenager.

109.    Her support needs include protective supervision and habilitation services as well as significant behavioral health supports.

110.    Plaintiff A.M. was a resident of Fircrest School, another state-run RHC in Shoreline, WA, from November 1, 2012 until February 18, 2022 when Fircrest School terminated services to Plaintiff A.M. while she was receiving emergency psychiatric evaluation and treatment.

111.    On February 22, 2022, Plaintiff A.M. was admitted to Rainier School. She was placed at Naches Cottage, an extension of the Klamath Cottage service.

112.    Plaintiff A.M. was told that Rainier School was her only available option to receive residential care, supervision, and support services from DDA.

113.    Plaintiff A.M. felt that she had to move to Rainier School or lose access to the 24-hour residential services she is assessed to need.

114.    At the time of her admission, Rainier School was in a staff-shortage crisis.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

115.     State surveyors recently documented that Rainier School was failing to keep residents with significant behavior support needs, like Plaintiff A.M., safe from harm.

116.     Rainier School was facing significant regulatory action at both PAT C and PAT E for inability to comply with federal health and safety regulations at the time of Plaintiff A.M.'s admission.

117.     Despite this knowledge, Defendants admitted Plaintiff A.M. to Rainier School.

118.     Plaintiff A.M. does not have access to the same level of care she was receiving at Fircrest. As a resident of Klamath Cottage, and not the ICF, Plaintiff A.M. is not entitled under Medicaid to receive the minimum level of services known as active treatment and her services are not regulated with the same level of oversight from the state survey agency and state Medicaid agency.

119.     Rainier School has failed to timely or adequately provide Plaintiff A.M. with basic necessary medical and behavioral health services. As of August 1, 2022, over five months since she arrived, Rainier School had been unable to schedule a needed dental appointment or optometrist appointment for Plaintiff A.M. to receive necessary care.  Further, Rainier School did not develop a behavior support plan for Plaintiff A.M. until July 2022, five months after her admission to the facility, and well outside the 30-day timeline required by DDA policy. *See* DDA Policy 5.24. Without the unified information, guidance, and training of an individualized behavior support plan, Plaintiff A.M.'s direct care staff did not know how to respond to her needs.

120.     Rainier School staff was inconsistent or unable to be responsive to her behavioral health diagnoses and past trauma resulting in Plaintiff A.M. feeling increasingly distressed.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

121.    Rainier School did not provide adequate training to staff on how to effectively support Plaintiff A.M. until the end of July 2022, 5 months after her admission.

122.    The lack of necessary training has resulted in harm to Plaintiff A.M. on multiple occasions.

123.    Plaintiff A.M. reported that staff engaged in name-calling and removed personal items from her home.

124.    On June 27, 2022, Rainier School staff performed a room search that was not conducted in accordance with a behavior support plan or in consultation with Plaintiff A.M.'s psychologist.

125.    Despite the search not being authorized by her plan or treating psychologists, Plaintiff A.M.'s staff threatened to put her in physical restraints during the room search if she did not comply.

126.    On July 14, 2022, Plaintiff A.M. sought medical treatment at Rainier School's medical clinic.

127.    Staff's attempt to remove Plaintiff A.M. from the clinic in a manner inconsistent with her behavior support plan. The removal was also not led by the onsite Qualified Intellectual Disability Professional who would have had insight on appropriate interventions. As a result, there was a physical altercation between Rainier School's staff and A.M.

128.    Plaintiff A.M. reported that this event caused her physical and emotional harm.

129.    Plaintiff A.M. does not feel safe or well supported at Rainier School.

130.    On July 19, 2022, Plaintiff A.M. made an official request to be readmitted to Fircrest School.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

131.    Plaintiff A.M. continues to reside at Klamath Cottage at Rainier School. Plaintiff A.M. lives in daily fear of suffering serious psychological and bodily injury at Rainier School. She has not been provided with any long-term placement options for care that meet her assessed support needs.

132.    Defendants' actions, inactions, policies, patterns, customs, and practices have violated and continue to violate A.M.'s constitutional and statutory rights.

133.    Defendants have harmed A.M. by placing her at a facility that is allowed to serve her despite serious known and relevant deficiencies and by failing to provide alternative service-options that can meet her assessed needs and provide effective protective supervision and safety.

134.    Further, Defendants have caused harm to A.M. by placing her in a part of the facility where she is not entitled by Medicaid to habilitation services and is not protected by the regulatory oversight and enforcement of the state survey agency.

135.    **Plaintiff Disability Rights Washington** is the protection and advocacy system for the State of Washington.

136.    Plaintiff Disability Rights Washington investigates allegations of abuse and neglect, including allegations of inadequate services and failure to implement care, at facilities for people with intellectual and developmental disabilities or related conditions.  This includes Rainier School and the other three state-operated RHCs in Washington State.

137.    Disability Rights Washington has engaged in significant systemic advocacy on behalf of its constituents with developmental disabilities who are receiving care in RHCs.

138.    This advocacy includes, but is not limited to, the investigation and production of a series of reports, released in July 2017, January 2018, May 2019, and January 2021, detailing incidents of abuse, neglect, and failure to provide appropriate services at Washington's RHCs.

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

All of these reports describe systemic problems at Rainier School and two of these reports are exclusively about Rainier School:

      a.  "No More Excuses: Shining a spotlight on abuse and neglect of people with developmental disabilities living at Rainier," January 2018.

      b.  "Chaotic and Dangerous: How the state's poor management of Rainier harms residents with developmental disabilities," May 2019.

139.   Disability Rights Washington has received and is responsible for investigating credible complaints about other constituents of Disability Rights Washington who have experienced or are experiencing harm at Rainier School similar to Plaintiff's G.G. and A.M..

140.   Disability Rights Washington has conducted multiple investigations of abuse and neglect for constituents at Rainier School in the past several decades.

141.   These investigations include, but are not limited to, responding to the following incidents of alleged abuse and neglect against Disability Rights Washington's constituents at Rainier School other than Plaintiffs G.G. and A.M..

      a.  In February 2020, Disability Rights Washington was notified that a resident of PAT C disappeared from Rainier School. This resident was never found and he was declared deceased. Disability Rights Washington's investigation found that the resident had a known and recent history of elopement behavior at Rainier School prior to his disappearance and death.

      b.  In May 2021, Disability Rights Washington was notified that a resident of PAT C was hospitalized after she ingested cleaning fluid. Disability Rights Washington's investigation revealed that this individual had a known history of Pica, a condition that involves eating inedible items, upon admission to

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

1    Rainier School in 2021. The individual swallowed a light bulb and drank

2    cleaning fluid within the first 4 months in Rainier School's care.

3       c.  In December 2021, Disability Rights Washington received notice that a

4    resident of PAT E choked on food and died.  Disability Rights Washington

5    investigation found that the individual had a documented history of being at

6    risk of choking. This included documentation that he acquired food from

7    improper sources and ate at a fast pace.  In February 2021, the individual

8    underwent a communication assessment that resulted in a recommendation

9    that he undergo a swallow study. Rainier School staff decided not to follow

10   the recommendation to seek a swallow study.  The individual choked on food

11   and died at his cottage at Rainier School in December 2021.

12      d.  In June 2022, DRW was notified that a resident of PAT C suffered and

13   emergency surgery to remove his eye after Rainier School staff failed to

14   properly treat his eye infection. DRW investigation revealed that Rainier

15   School nursing staff failed to administer the resident's prescribed antibiotic

16   eye drops and discontinued monitoring and treatment of the eye despite the

17   fact that the eye remained symptomatic. The resident was later transferred to a

18   hospital when the infection became an emergency. At the time of the eye

19   removal, the resident was in his seventies and had lived at Rainier School for

20   over six decades.

21      142.    Disability Rights Washington has been conducting systemic, ongoing

22   investigations of the regulatory findings against PAT C and PAT E, described in paragraphs 66

23   and 67 above, on behalf of its constituents living in those ICFs.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 31

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

143.     Disability Rights Washington has also been closely monitoring and investigating the establishment of Klamath Cottage as a new service on the grounds of Rainier School since it began serving clients.

144.     As part of its investigations, Disability Rights Washington has maintained a presence at Rainier School to connect with constituents and monitor conditions. Disability Rights Washington has the federal authority to conduct unannounced, unaccompanied monitoring visits to any setting providing services to people with disabilities.

145.     Since January 2020, Disability Rights Washington has conducted 16 monitoring visits to Rainier School including 16 visits to Klamath Cottage.

146.     Disability Rights Washington has engaged in advocacy on behalf of people with disabilities for over fifty years, and over the past twenty years, Disability Rights Washington has undertaken significant systemic litigation to protect the rights of its constituents with intellectual disabilities and related conditions to ensure they receive individualized and appropriate care.

147.     Because Disability Rights Washington's constituency includes Plaintiffs G.G., A.M. and other current, past, and future residents of Rainier School, the interests of Disability Rights Washington and the affected individuals in this case are aligned.

## VII.    CLAIMS FOR RELIEF

**FIRST CLAIM: DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE FOURTEENTH AMENDMENT**
**(Substantive Due Process)**

148.     Plaintiffs re-allege the paragraphs above.

149.     When the State takes an individual into its custody through incarceration, institutionalization or another similar restraint of personal liberty, it assumes an affirmative duty under the Fourteenth Amendment to the United States Constitution to provide for the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 32

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521  ·  Fax: (206) 957-0729

individual's care and safety and to reasonably protect the individual from harm and risks of harm.

150.    The foregoing actions and inactions of Defendants constitute a failure to meet their affirmative duty to protect Plaintiffs from harm and keep Plaintiffs reasonably free from harm and risk of harm.  These failures are a substantial factor leading to, and proximate cause of, the violation of the constitutionally-protected liberty interests of the Plaintiffs.

151.    The foregoing actions and inactions of Defendants directly caused harm to Plaintiffs' safety and bodily security. The harm caused by the direct action of Defendants, who are state employees, is a substantial factor leading to, and proximate cause of, the violation of the constitutionally-protected liberty interests of the Plaintiffs

152.    Defendants' failures and direct actions constitute a pattern, custom, policy, and practice that are contrary to law and any reasonable professional standards, are substantial departures from accepted professional judgment, and are conducted with deliberate indifference to known harms and imminent risk of known harms and to Plaintiffs' constitutionally protected rights and liberty interests, such that Defendants were plainly placed on notice and chose to ignore the risk of harm and actual harm to vulnerable individuals in its care.

153.    As a result of Defendants' actions and inactions, Plaintiffs have been harmed or are at continuing and imminent risk of harm and have been deprived of their substantive due process rights guaranteed by the Fourteenth Amendment.

**SECOND CLAIM: DECLARATORY AND INJUNCTIVE RELIEF FOR
VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

154.    Plaintiffs re-allege the paragraphs above.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 33

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

155.    Plaintiffs are all "qualified individuals with a disability" within the meaning of 42 U.S.C. § 12131(2).

156.    Plaintiffs' disabilities lead to them being served in Rainier School and not some other setting.

157.    Defendants have not provided Plaintiffs with the same quality of service as they would have received in another facility or community-based setting that provides the equivalent level of care.

158.    Defendants' acts and omissions effectively deny Plaintiffs the benefits of the services provided by the Developmental Disabilities Administration and subject Plaintiffs to discrimination on the basis of disability in violation of Title II of the ADA, 42 U.S.C. § 12132 and its implementing regulations.

159.    Defendants discriminate against Plaintiffs by denying them access to adequate services based on the nature and severity of their disabilities, in violation of 28 C.F.R § 35.130(b)(1). As a result, Defendants failure to provide adequate services has a disparate impact on Plaintiffs in violation of the ADA.

160.    Defendants' "methods of administration" further have the effect of subjecting Plaintiffs to discrimination on the basis of disability by subjecting them to unnecessary and unjustified segregation, or placing them at risk of unnecessary and unjustified segregation, in violation of 28 C.F.R. § 35.130 (b)(3).

### THIRD CLAIM:  DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

161.    Plaintiffs re-allege the paragraphs above.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 34

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

162.    Plaintiffs and putative class members are qualified individuals with disabilities under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (a).  Defendants' agencies, HCA and DSHS, receive federal financial assistance.

163.    Defendants violate Section 504 of the Rehabilitation Act and its implementing regulations by denying Plaintiffs access to adequate services based on the nature and severity of their disabilities, thereby requiring that Plaintiffs be confined in an institutional setting that does not provide the same quality of service as other facility or community-based settings that provide the equivalent level of care.

### FOURTH CLAIM: DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF WASHINTON'S LAW AGAINST DISCRIMINATION (WLAD)

164.    Plaintiffs re-allege the paragraphs above.

165.    Plaintiffs are all individuals with disabilities within the meaning of WASH. REV. CODE § 49.60.040(7).  Plaintiffs have been injured by being denied access to adequate services based on the nature and severity of their disabilities.

166.    Defendants violate WLAD by denying Plaintiffs access to adequate services based on the nature and severity of their disabilities, thereby requiring that Plaintiffs be confined in a dangerous, segregated, institutional setting that does not provide the same quality of service as other facility or community-based settings that provide the equivalent level of care.

### VIII.   DEMAND FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

1.    Declare that Defendants' failure to reasonably respond to known deficiencies at Rainier School and failure to implement an adequate system for ensuring availability of safe and effective services results in harm to the Plaintiffs, or places them at risk of harm, and violates the

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

14th Amendment of the United States Constitution, Title II of the ADA, Section 504 of the

Rehabilitation Act, and the Washington Law Against Discrimination.

      2.     Enjoin Defendants from continued violations of the 14th Amendment of the

United States Constitution, Title II of the ADA, Section 504 of the Rehabilitation Act, and the

Washington Law Against Discrimination and order appropriately tailored remedies directed at

Defendants to ensure future compliance with their obligations to Plaintiffs including but not

limited to ordering Defendants to:

        a.   End the practice of admitting any new residents, including re-admitting returning

           residents, to Rainier School;

        b.   Promptly discharge, with appropriate planning and transition supports, Plaintiff

           A.M. to an alternative service setting that can meet her assessed needs and are in

           alignment with her choice for service setting and geographic location;

        c.   Require that Defendants contract with an independent consultant to monitor the

           provision of safe and adequate services to individuals who remain in Rainier

           School's custodial care and monitor the discharge and transition planning for

           those residents who choose to move to a new service setting;

        d.   Require that Defendants promptly discharge, with appropriate planning and

           support, all residents of Rainier School who choose to move and ensure that these

           individuals are discharged to a service setting that meets their assessed needs and

           is in alignment with the individual's choice of service type and geographic

           location;

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

    e.   Require that Defendants provide new assessments and care plans for each remaining resident of Rainier School and ensure that all their needs can be fully and safely met with the existing facility staff, skills, training, and oversight;

    f.   Require that DSHS contract with an independent consultant to conduct an expert study of (i) deficiencies in DDA's crisis stabilization services and residential supports for individuals with complex behaviors and co-occurring behavioral health diagnoses and (ii) systemic improvements needed to end or reduce DSHS's reliance on Rainier School as a residential placement option;

    g.   Require DSHS to correct the deficiencies and implement the strategies identified by the study.

3.   Award Plaintiffs attorney fees and costs; and

4.   Award such other relief as is just and proper.

DATED:  September 2, 2022.

**Disability Rights Washington**

_____/s/ Beth Leonard_____
Beth Leonard, WSBA #46797
Todd Carlisle, WSBA # 25208
David Carlson, WSBA #35767
315 – 5th Avenue South, Suite 850
Seattle, WA  98104
Tel. (206) 324-1521; Fax (206) 957-0729
Email:  bethl@dr-wa.org
          toddc@dr-wa.org
          davidc@dr-wa.org

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 37

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

**Pfau Cochran Vertetis Amala**


    /s/ Ian Bauer
Darrell Cochran, WSBA #22851
Ian Bauer, WSBA #35563
Patrick Brown, WSBA #56627
Alexander Dietz, WSBA #54842
909 A Street, Suite 700
Tacoma, WA  98402
Tel. (253) 289-1412; Fax (253) 627-0654
Email: darrell@pcvalaw.com
      ibauer@pcvalaw.com
      pbrown@pcvalaw.com
      adietz@pcvalaw.com


Attorneys for Plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 38

Disability Rights Washington
315 5th Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729