1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| G.G., by and through his grandmother and guardian, A.G.; A.M., by and through her parent and guardian, L.M.; and DISABILITY RIGHTS WASHINGTON, a nonprofit membership organization for the federally mandated Protection and Advocacy Systems,<br><br>                 Plaintiff,<br>   v.<br><br>JILMA MENESES, in her official capacity as Acting Secretary of the Washington State Department of Health and Human Services; and SUSAN BIRCH, in her official capacity as Director of the Washington State Health Care Authority,<br><br>               Defendants. | CASE NO. 3:22-cv-05651-RJB<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS |

11
12
13
14
15
16
17
18
19
20
21
22

This matter comes before the Court on Defendants' Motion to Dismiss. Dkt. 11. The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

23
24

ORDER ON DEFENDANTS' MOTION TO DISMISS - 1

The Plaintiffs in this case seek declaratory and injunctive relief regarding The Rainier School ("Rainier"), a state-run, residential facility for people with intellectual and developmental disabilities.  Dkt. 1.  The Plaintiffs contend that it is a dangerous place to live and fails to provide for the health and safety of its residents.  *Id.*  The Plaintiffs bring claims for violations of their Fourteenth Amendment rights (pursuant to 42 U.S.C. § 1983), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et. seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.  *Id.*

The Defendants Jilma Menses and Susan Birch, sued in their official capacities (collectively the "State"), move to dismiss the Plaintiffs' Complaint, arguing that the Plaintiffs lack standing and that they fail to state a claim on which relief can be granted.  For the reasons provided below, the motion (Dkt. 11) should be granted, in part and denied, in part.

## I.     FACTS AND PROCEDURAL HISTORY

### A.  FACTS

According to the Complaint, Rainier is one of four Residential Habilitation Centers ("residential centers") established by the State.  Dkt. 1 at 10.  The purpose of a residential center is "[t]o provide for those persons who are exceptional in their needs for care, treatment, and education by reason of developmental disabilities . . . and to ensure a comprehensive program for the education, guidance, care, treatment, and rehabilitation of all persons admitted . . ." RCW § 71A.20.010(1).  They primarily serve adults and can only serve those under 21 when "there is no service options available in the community . . . such admission is limited to . . . short term respite or crisis stabilization services."  RCW § 71A.20.010(2).  Defendant Meneses operates the residential centers through the Developmental Disabilities Administration.  *Id.*

1    Portions of residential centers may be licensed as an intermediate care facility for individuals

2    with intellectual and developmental disabilities ("intermediate care facility") or as a skilled

3    nursing facility.  Dkt. 1 at 11.  Intermediate care facilities and skilled nursing facilities "must be

4    certified to be funded as Medicaid State Plan Services."  *Id.*  To maintain their certification, the

5    residential centers must comply with federal conditions of participation.  *Id.*  State agencies must

6    survey intermediate care facilities every 15 months for compliance.  *Id.*  When an intermediate

7    care facility is found to be out of compliance, the state Medicaid agency may put the facility on a

8    Denial of Payment for New Admissions instead of terminating the facilities' certification.  *Id.*  If

9    the intermediate care facility cannot come into compliance with the federal requirements within

10   11 months, the state Medicaid agency must terminate the facility's certification. *Id.* at 12 (*citing*

11   42 C.F.R. 442.117(a)(2)).  Defendant Susan Birch is responsible for Medicaid licenses for both

12   intermediate care facilities and skilled nursing facilities.  *Id.* at 11.

13   Two units of Rainier are licensed as intermediate care facilities. Dkt. 1 at 13.  Plaintiff G.G.

14   was a resident of one of Rainier's intermediate care facility units until February 2022.  *Id.* at 25.

15   Rainier also includes two cottages, Klamath Cottage and Naches Cottage, which are not certified

16   as an intermediate care facility, skilled nursing facility, or otherwise licensed as a long-term care

17   setting.  *Id.*  Plaintiff A.M. lives at Naches Cottage.  *Id.*

18   As Acting Secretary of DSHS, Defendant Meneses has "'custody of all residents of the

19   [residential centers] and control of the medical, educational, therapeutic and dietetic treatment of

20   all residents . . .'"  *Id.* at 13(*quoting* RCW 71A.20.050(2)).  If a resident desires to leave a

21   residential center and the DSHS Secretary believes that a departure "may be harmful to the

22   resident," the Secretary may hold a resident for a period not to exceed 48 hours "in order to

23   consult with the person's legal representative."  RCW 71A.20.140(1).

24

The state's Developmental Disabilities Administration places residents at Rainier "due to the complexity of their support needs;" some enter the facility "because there were no other available service-options to meet their assessed needs." *Id.* at 13. Rainier serves around 120 individuals with developmental disabilities in its two intermediate care facility units; approximately 86 of whom also have co-occurring behavioral or mental health diagnoses. *Id.* at 12. There are approximately six people who live at either Klamath Cottage and Naches Cottage, at least one of whom (Plaintiff A.M.) has co-occurring behavioral or mental health diagnoses. *Id.* at 22.

According to the Complaint, Rainier alleges it provides:

a. Medical, dental and nursing care;

b. Social and psychological services;

c. Occupational therapy, physical therapy and speech therapy evaluations, treatment, and adaptive equipment;

d. Vocational training and employment;

e. Recreation facilities; and

f. Nutrition and dietary services, including modified textures and therapeutic diets.

*Id.* at 12-13. The Complaint alleges that "many" of the residents have indicated that they do not want to live at Rainier for long-term care. *Id.* at 14.

The Complaint alleges that there is inadequate direct care staff at Rainier (with over 150 vacancies for direct care staff) and professional staff (with only one licensed psychologist) at present. Dkt. 1 at 15. This understaffing is alleged to risk harm to residents. *Id.*

The Complaint also alleges that Rainier has a history of failing to meet federal regulatory requirements for health and safety violations. *Id.* For example, it contends that Rainier's two

intermediate care facility units are on Denial of Payment for New Admissions status and cannot receive any new admissions. *Id.* at 16-20.  It points out that in February of 2020, state surveyors issued an "Immediate Jeopardy" finding after a resident disappeared from the facility; Rainier failed to correct the cause for months and another "Immediate Jeopardy" finding was made after another resident left the facility. *Id.* at 17-18.  The Complaint also notes that as recently as June of 2022, Rainier has been found out of compliance with federal regulations in several key areas, including governing body and management; client protections; health care services; and active treatment services. *Id.* at 17-21.  For example, it alleges that a failure to train staff has resulted in resident deaths and serious injuries, including a resident's eye loss. *Id.* at 19.  The Complaint maintains that the failure to correct deficient practices harms or creates a risk of harm to the residents. *Id.* at 21.

According to the Complaint, the Klamath Cottage was created in April of 2020 in response to the COVID-19 pandemic. Dkt. 1 at 21.  An additional cottage was also created, Naches Cottage. *Id.*  The cottages are not licensed as long-term care facilities. *Id.*  They are not subject to the same surveyor oversight and are not required to provide the level of services that are available in Rainier's two intermediate care facility units. *Id.*  There are approximately six people who live at the cottages, including Plaintiff A.M. *Id.* at 22.  Three have lived in one of the cottages for over one year. *Id.*

The Complaint maintains that the State does not provide effective oversight to Rainier and continues to use it (including admission of new residents) "despite knowing of its dangerousness." Dkt. 1 at 22-23.  It alleges that the Defendants know that Rainier repeatedly submits insufficient corrective action plans. *Id.*, at 23.  The Complaint contends that the Defendants know that there is a persistent staffing shortage and that a state survey agency has

recommended termination of the intermediate care facility certifications at Rainier.  *Id.*  It

maintains that the Defendants know that the cottages are not certified or licensed long-term care

facilities subject to federal and state regulatory oversight.  *Id.*  The Complaint alleges that the

Defendants "know of the dangerous, systemic deficiencies at Rainier School, including recurring

incidents of death and serious harm to residents."  *Id.*  It asserts that Defendant Meneses

continues to use Rainier School to serve individuals with developmental disabilities and

Defendant Birch continues to provide Medicaid funding to Rainier's two intermediate care

facility units.  *Id*.

       The Complaint also contends that the State does not "have a system of services for

individuals with developmental disabilities that effectively provides crisis stabilization and

behavior support services such that [Developmental Disabilities Administration] clients can

avoid admission to Rainier."  Dkt. 1 at 23.

       In the request for relief, the Complaint seeks a declaration that the Defendants' "failure to

respond to known deficiencies at Rainier School and failure to implement an adequate system for

ensuring availability of safe and effective services results in harm to the Plaintiffs, or places them

at risk of harm," and violates the Fourteenth Amendment, Title II of the ADA, RA and WLAD.

Dkt. 1 at 35-36.  It seeks an order enjoining the Defendants from continued violations of those

laws and an "order appropriately tailored remedies directed at Defendants to ensure future

compliance with their obligations to Plaintiffs" including:

> a. End the practice of admitting any new residents, including re-admitting
> returning residents, to Rainier School;
>
> b. Promptly discharge, with appropriate planning and transition supports, Plaintiff
> A.M. to an alternative service setting that can meet her assessed needs and are in
> alignment with her choice for service setting and geographic location;

ORDER ON DEFENDANTS' MOTION TO DISMISS - 6

c. Require that Defendants contract with an independent consultant to monitor the provision of safe and adequate services to individuals who remain in Rainier School's custodial care and monitor the discharge and transition planning for those residents who choose to move to a new service setting;

d. Require that Defendants promptly discharge, with appropriate planning and support, all residents of Rainier School who choose to move and ensure that these individuals are discharged to a service setting that meets their assessed needs and is in alignment with the individual's choice of service type and geographic location;

e. Require that Defendants provide new assessments and care plans for each remaining resident of Rainier School and ensure that all their needs can be fully and safely met with the existing facility staff, skills, training, and oversight;

f. Require that DSHS contract with an independent consultant to conduct an expert study of (i) deficiencies in [Developmental Disabilities Administration]'s crisis stabilization services and residential supports for individuals with complex behaviors and co-occurring behavioral health diagnoses and (ii) systemic improvements needed to end or reduce DSHS's reliance on Rainier School as a residential placement option;

g. Require DSHS to correct the deficiencies and implement the strategies identified by the study.

*Id.* at 36-37.  The Plaintiffs also seek attorneys' fees and costs.  *Id.*

**B.  ORGANIZATION OF OPINION**

This opinion will first address the Defendants' motion to dismiss under Fed. R. Civ. P. ("Rule") 12(b)(1) for lack of standing and then the motion to dismiss under Rule 12(b)(6) for failure to state a claim.

## II.      DISCUSSION

**A.  STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(1)**

A complaint must be dismissed under Rule 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the

meaning of the Constitution; or (3) is not one described by any jurisdictional statute.  *Baker v. Carr*, 369 U.S. 186, 198 (1962).  When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).  A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction.  *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

## B.  MOTION TO DISMISS UNDER RULE 12(b)(1) – LACK OF STANDING

Article III of the U.S. Constitution "limits federal judicial power to 'Cases' and 'Controversies.'"  *Van Patten v. Vertical Fitness GRP., LLC* 847 F.3d 1037, 1041 (9th Cir. 2017).  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1160 (9th Cir. 2017).  "At an irreducible constitutional minimum, standing requires the party asserting the existence of federal court jurisdiction to establish three elements: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury."  *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010)(*citing Lujan,* at 560-61).  "Apart from this, standing for injunctive relief requires that a plaintiff show a real and immediate threat of

repeated injury." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 947 (9th Cir. 2017)(*internal quotation marks and citations omitted*).

    1. <u>Plaintiff G.G.</u>

   According to the Complaint, Plaintiff G.G. was admitted to Rainier when he was 18 years old after the state's Developmental Disabilities Administration determined that there was no other available option to meet his needs.  Dkt. 1 at 23.  G.G. needs 1:1 protective supervision 24/7 and is known to have elopement behavior.  *Id.* at 24.  G.G. is also known to be physically and verbally aggressive.  *Id.*  The Complaint alleges that the Developmental Disabilities Administration improperly placed G.G. at Rainier when it was under an active, unresolved Immediate Jeopardy finding related to high risk of harm to residents with elopement behavior and significant behavioral health needs.  *Id.*  The Complaint alleges that Rainier failed to provide G.G. with proper active treatment and vocational training and it improperly used physical and mechanical restraints and pharmacological intervention to control G.G.'s behavior.  *Id.* at 25.  In February 2022, G.G.'s stay with Rainier was terminated and he was admitted to a restrictive hospital setting.  *Id.*  The Complaint alleges that G.G. is "at risk of being readmitted to Rainier [] upon discharge."  *Id.*

   Plaintiff G.G.'s claims should be dismissed for lack of standing.  Plaintiff G.G. does not seek damages for past events but only for forward-looking injunctive relief.  He has failed to show he faces a "real and immediate threat of repeated injury" at Rainier.  *Updike* at 947.  He is not currently a resident there and makes no showing that he is likely to return.  His assertions that he "is at risk of being readmitted," are speculative.

    2. <u>Plaintiff A.M.</u>

1    According to the Complaint, Plaintiff A.M. is 45 years old and requires protective

2 supervision, habilitation services, and "significant behavioral health supports." Dkt. 1 at 26. She

3 was admitted to Rainier on February 22, 2022 and placed at one of the cottages, Naches Cottage.

4 *Id.* The Complaint alleges that A.M. was told that Rainier was her "only available option to

5 receive residential care, supervision, and support services from [Developmental Disabilities

6 Administration]." *Id.* It contends that her placement there was improper considering the staffing

7 shortages and the federal health and safety regulation violations at Rainier. *Id.* at 27. The

8 Complaint asserts that A.M. is not "entitled under Medicaid to receive the minimum level of

9 services[,] known as active treatment[,] and her services are not regulated with the same level of

10 oversight" because she has been placed at a cottage. *Id.* It alleges that Rainier has failed to

11 timely or adequately provide A.M. with medical and behavioral health services. *Id.* The

12 Complaint contends that A.M. has not been provided any long-term placement options. *Id.*

13 A.M. has requested a transfer but, at present, remains at Rainier. *Id.* at 28.

14    Plaintiff A.M. has not made a sufficient showing that she has standing to assert claims

15 against Defendant Birch based on the allegations in the Complaint. The Complaint indicates that

16 the cottages, like the one housing Plaintiff A.M., is not funded by Medicaid, the program over

17 which Defendant Birch is affiliated. While Plaintiff A.M. offers additional facts to attempt to

18 argue that the cottages are, in fact, funded by Medicaid, those facts are not in the Complaint.

19    Plaintiff A.M. has made a showing that she has standing to make claims against

20 Defendant Meneses. She has asserted an injuries in fact that are concrete and particularized and

21 actual or imminent under the ADA and RA. She has demonstrated that Defendant Meneses, in

22 her official capacity, caused her injuries. There is a sufficient showing that a favorable decision

23

24

will address her injuries.  Lastly, she has shown a "real and immediate threat of repeated injury." *Updike* at 947.

### 3.   Plaintiff Disability Rights Washington

According to the Complaint, Disability Rights Washington is "the statewide protection and advocacy system designated by the Governor of the State of Washington to protect and advocate for the legal and civil rights of those residents of this state who have disabilities" pursuant various federal and state statutes.  Dkt. 1 at 4.  Those statutes include the Developmental Disabilities Act, 42 U.S.C. §§ 15041-45, the Protection and Advocacy of Individuals with Mental Illness Act, 42 U.S.C. §§ 10801-51 and RCW 71A.10.080(2).  The Developmental Disabilities Act includes a provision allowing advocacy organizations like Disability Rights Washington to "pursue legal, administrative, and other appropriate remedies" for people with developmental disabilities.  42 U.S.C. § 15043(a)(2)(A)(ii).  The Complaint alleges that it is governed by a board of directors comprised of a majority of people with disabilities.  It contends that Disability Rights Washington's "constituents include all people with disabilities across Washington, including but not limited to Plaintiffs G.G., A.M., and all other Washington residents with developmental and intellectual disabilities . . . who have received, are receiving or will receive services at Rainier." *Id.* at 5.

"An association or organization can sue based on injuries to itself or to its members." *Am. Unites for Kids v. Rousseau,* 985 F.3d 1075, 1096 (9th Cir. 2021)(*internal citation omitted*).  The first issue to be considered is whether Disability Rights Washington's constituents are "members" for standing purposes.

"Given [Disability Rights Washington's] statutory mission and focus . . . its constituents . . . . are the functional equivalent of members." *Mink* at 1110 (holding that a statutorily created

advocacy organization for people with mental illnesses had associational standing for their constituents).  Plaintiff A.M. and the other residents at Rainier are members of Disability Rights Washington for purposes of associational standing.  Disability Rights Washington then, may sue on their behalf.

An organization has associational standing to sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Rousseau* at 1096.  Although the first two requirements are constitutional in nature, the third is prudential.  *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003)

Plaintiff Disability Rights Washington has demonstrated that it has associational standing which will allow it to bring claims on behalf of its member-constituents at the Rainier cottages.  As to the first *Hunt* factor, as above, at least one of its members, Plaintiff A.M., has standing to sue in her own right regarding conditions at the cottages.  Disability Rights Washington has not demonstrated that it has standing to bring claims on behalf of residents in the intermediate care facility units of Rainier.  The Complaint acknowledges that some of the residents wish to leave because they are either on "short-term stays," or are in a program that helps them transition into the community.  Disability Rights Washington has not pointed to a single member that lives in the intermediate care facility units of Rainier that feels they have an injury leading to that member's standing to sue.  Disability Rights Washington has not shown standing as to all residents of Rainier.

1   There is no dispute as to the *Hunt* second factor regarding its associational standing for

2   residents of the cottages.  The interests Disability Rights Washington seeks to protect here – the

3   rights of people with developmental disabilities – are germane to its purpose.

4   The State contends that the third *Hunt* factor that "neither the claim asserted nor the relief

5   requested requires the participation of individual members in the lawsuit," is not met.  This

6   factor does not apply here because "[i]n light of the role Congress assigned by statute to

7   advocacy organizations such as [Disability Rights Washington,] Congress abrogated the third

8   prong of the *Hunt* test."  *Mink* at 1113.

9   Disability Rights Washington's assertion that it has standing solely by virtue of its

10  enabling statutes is without merit.  The Ninth Circuit has held that while statutes like

11  Developmental Disabilities Act or the Protection and Advocacy of Individuals with Mental

12  Illness Act are relevant in the standing analysis, they do "not definitively answer the question" of

13  whether an organization has standing.  *Mink* at 1110.

14  4.  <u>Conclusion on Motion to Dismiss Under Rule 12(b)(1)</u>

15  The motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) (Dkt. 11) should

16  be granted, in part, and denied, in part.  The motion to dismiss Plaintiff G.G.'s claims for lack of

17  standing should be granted and his claims dismissed without prejudice.  The motion should be

18  denied as to Plaintiff A.M.

19  In so far as Disability Rights Washington seeks to assert associational standing for the

20  residents of the cottages, the motion to dismiss it for lack of standing (Dkt. 11) should be denied.

21  To the extent Disability Rights Washington seeks to assert associational standing for all other

22  residents of Rainier, the motion to dismiss (Dkt. 11) should be granted and those claims

23  dismissed without prejudice.

24

### C.  STANDARD ON MOTION TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555.  The complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 547.

### D.  FOURTEENTH AMENDMENT CLAIM PURSUANT TO 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

There is no dispute that the Defendants were state actors, that is "person[s] acting under the color of state law."  The issue is whether the Plaintiffs have sufficiently pled that they have been deprived of their Fourteenth Amendment rights.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  "A threshold

requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007)(*aff'd sub nom. Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008)).

The Plaintiffs here allege that it is their liberty interests in their lives (and risks to their lives), and to some degree their property, that is at stake.  The Plaintiffs argue that by virtue of their special relationship with the State that the State has an affirmative obligation to ensure their due process rights are not violated and that the State has failed to meet its obligations.  In the alternative, the Plaintiff contend that the State has directly violated their due process rights. Each will be considered below.

### 1.  Special-Relationship Exception

A state's failure to protect due process interests does not violate the Fourteenth Amendment unless one of two exceptions apply:  the special-relationship exception or the state-created danger exception.  *Campbell v. State of Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 843 (9th Cir. 2011); *DeShaney v. Winnebago County Dept. of Soc. Serv.,* 489 U.S. 189, 197 (1989)(due process clause does not generally impose an affirmative obligation on the State to ensure that due process interests "do not come to harm by other means"). The state-created danger exception is not alleged to apply here.

The special-relationship exception to the general rule that the Due Process Clause does not guarantee a right to governmental aid "applies when the state takes a person into its custody and holds [them] there against [their] will."  *Patel v. Kent School Dist.,* 648 F.3d 965, 972 (9th Cir. 2011)(*internal quotation marks and citations omitted*).  "The types of custody triggering the exception are incarceration, institutionalization, or other similar restraint of personal liberty."  *Id.*

"[T]he state's affirmative duty to protect arises from the limitation the state has imposed on the person's freedom to act for himself; the duty does not arise from the State's knowledge of the individual's predicament or from the State's expressions of intent to help." *Campbell* at 843.

The Plaintiffs have failed to allege sufficient facts to conclude that the special-relationship exception applies. The Plaintiffs allege that they are in the custody of the State and so the exception applies. "Mere custody . . . will not support a 'special relationship' claim where a person voluntarily resides in a state facility under its custodial rules." *Campbell* at 843.

The Plaintiffs contend that residents at Rainier may not always be at Rainier voluntarily, pointing to the 48-hour hold found in RCW 71A.20.140(1), which provides that if a resident desires to leave a residential center and the DSHS Secretary believes that a departure "may be harmful to the resident," the Secretary may hold a resident for a period not to exceed 48 hours "in order to consult with the person's legal representative." The Plaintiffs fail to allege that anyone at Rainier has ever been subject to that hold. Further, they do not allege any injury as a result of the 48-hour hold. The 48-hour emergency hold is not sufficient to support a special relationship claim.

The Plaintiffs contend that their placement, while initially voluntary, became custodial in nature over time. The Plaintiffs argue that their placement became custodial in nature because of the threat of the use of physical or chemical restraints. This threat is not sufficient. First, as to some of the residents at Rainier, physical or chemical restraints are part of the reason they entered Rainier. "The state's performance of the very acts for which an individual voluntarily enters state care does not transform the custodial relationship into an involuntary one." *Campbell* at 843. Second, the Plaintiffs fail to allege that Rainier threatens to physically or chemically restrain any of the residents to force them to remain at the facility. For example,

1   although Plaintiff A.M. alleges that at one point, staff threatened the use of physical restraints to

2   force her to submit to a search of her room, she fails to show that the threats forced her to stay at

3   Rainier – thus transforming her voluntary agreement to remain at Rainier into an involuntary

4   one.  The Plaintiffs have not stated a plausible claim for relief based on the special-relationship

5   exception.

6           2.   <u>Direct Action</u>

7        "Substantive due process protects individuals from arbitrary deprivation of their liberty

8   by government."  *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1110 (9th Cir.

9   2010).  "The threshold question is whether the behavior of the governmental officer is so

10  egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

11  *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020)(*internal quotation marks and*

12  *citations omitted*).  The relevant question here is whether the "shock the conscience" standard is

13  met here with the Plaintiff's allegations of the State's deliberate indifference regarding their

14  policy and practices.

15       The Plaintiffs have not alleged sufficient facts to plausibly allege a substantive due

16  process claim.  Their allegations of deliberate indifference do not rise to the level of "shocking

17  the conscience."  *Vazquez* at 1162.  The Complaint acknowledges that the Defendants' decision

18  making regarding the cottages has occurred within the context of the COVID-19 pandemic.

19  Further, while the Complaint maintains that as cottage residents, they are not receiving the

20  appropriate level of care and services, they fail to allege sufficient facts from which to conclude

21  that these failures rise to a constitutional violation.

22       The motion to dismiss the Fourteenth Amendment claim should be granted.

23  **E.  ADA AND RA CLAIMS**

24

Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Section 504 of the RA "similarly prohibits disability discrimination by recipients of federal funds." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021).  Title II of the ADA and the RA "are interpreted coextensively because there is no significant difference in the analysis of rights and obligations created by the two Acts" aside from the RA's requirement that the program receive federal funds, which is not at issue here.  *Id.*

To prove a violation of Title II of the ADA or of the RA, a plaintiff must show that: (1) they are a "qualified individual with a disability"; (2) they were "either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (3) "such exclusion, denial of benefits, or discrimination was by reason of [their] disability." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1135 (9th Cir. 2001) (citing *Weinreich v. Los Angeles County Metropolitan Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997)).

The Plaintiffs here allege that they are a person with developmental disabilities (A.M.) or are an association of people with developmental disabilities (Disabilities Rights Washington). They meet the first element of their Title II ADA and RA claims.

As to the second element, Plaintiff A.M. alleges that she has been denied "necessary care and supports to meet her assessed needs" at Rainier.  Dkt. 1 at 4.  She asserts that by placing her at one of the cottages, she has been denied the benefit of surveyor oversight and the level of services outlined by the intermediate care facility regulations that are offered to other residents.

1    *Id.* at 22.  Plaintiff A.M. contends in the Complaint that she has not received the "active

2    treatment" services to which she is entitled because she is at one of the cottages.  *Id.* at 27.

3    Plaintiff A.M. asserts that the Defendants have left her in one of the cottages "despite serious

4    known and relevant deficiencies and by failing to provide alternative service-options," and

5    "provide effective protective supervision and safety."  *Id.* at 29.  Likewise, Disability Rights

6    Washington contends that its member residents at the cottages have also been denied the benefit

7    of oversight and services.

8            In an effort to meet the third element (that "such exclusion, denial of benefits, or

9    discrimination was by reason of [their] disability,") the Plaintiffs argue that the State's policies

10   have a disparate impact on people with disabilities.  "To assert a disparate impact claim, a

11   plaintiff must allege that a facially neutral government policy or practice has the effect of

12   denying meaningful access to public services to people with disabilities."  *Payan v. Los Angeles*

13   *Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021).  "If a public entity's practices or procedures

14   deny people with disabilities meaningful access to its programs or services, causing a disparate

15   impact, then the public entity is required to make reasonable modifications to its practices or

16   procedures."  *Id.*  "[A] reasonable modification in response to a disparate impact finding is

17   focused on modifying a policy or practice to improve systemic accessibility."  *Id.*

18           The Complaint has alleged sufficient facts that plausibly show that the creation of the

19   cottages has had the effect of denying A.M. and other cottage residents "meaningful access to

20   public services."  It contends that the decision to put residents in the cottages has resulted in their

21   not having access to the programming that residents in the intermediate care facility units were

22   given.  The Complaint also alleges that the residents of the cottages, because of the decision not

23

24

to use Medicaid funds to fund the cottages, are not given the benefit of governmental oversight which is given to the residents in the intermediate care facility units.

The motion to dismiss the Plaintiffs' ADA and RA claims as to A.M. and other cottage residents should be denied.  (ADA and RA claims brought by Plaintiff G.G. and Plaintiff Disability Rights Washington on behalf of residents of the intermediate care facility units are dismissed by this order for lack of standing.)

### F.  WLAD CLAIM

The Plaintiffs' WLAD claim should be dismissed with prejudice and without leave to amend.  The Eleventh Amendment "precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal courts." *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 973 (9th Cir. 2004).  There is no showing that the Washington State Defendants have consented to litigating Plaintiff's WLAD claim here.  That claim should be dismissed.

### G.  CONCLUSION ON RULE 12(b)(6) MOTION TO DISMISS

The motion to dismiss for failure to state a claim (Dkt. 11) should be granted, in part and denied, in part.  The Plaintiffs claims for violations of the ADA and RA should not be dismissed. The Plaintiffs' claims for violation of their Fourteenth Amendment rights should be dismissed without prejudice for failure to state a claim. The Plaintiffs claims for violations of the WLAD should be dismissed with prejudice.

Parties or claims dismissed without prejudice, may if appropriate, be subject to a motion to amend which complies with the Federal Rules of Civil Procedure as well as Local Rule W.D. Wash. 15.

III.   ORDER

Therefore, it is hereby **ORDERED** that:

- The Defendants' Motion to Dismiss (Dkt. 11) **IS DENIED**, in part and **GRANTED** as follows:

  o Plaintiff G.G.'s claims **ARE DISMISSED WITHOUT PREJUDICE** for lack of standing;

  o Plaintiff Disability Rights Washington's claims related to the intermediate care facility units of Rainier **ARE DISMISSED WITHOUT PREJUDICE** for lack of standing;

  o Plaintiffs' claims for violations of the Fourteenth Amendment **ARE DISMISSED WITHOUT PREJUDICE**; and

  o Plaintiff's claims for violations of the WLAD **ARE DISMISSED WITH PREJUDICE**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 1st day of November 2022.

ROBERT J. BRYAN
United States District Judge

ORDER ON DEFENDANTS' MOTION TO DISMISS - 21