1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

17

18

19

20

| | |
|---|---|
| G.G., by and through his grandmother and guardian, A.G.; A.M., by and through her parent and guardian, L.M.; and DISABILITY RIGHTS WASHINGTON, a nonprofit membership organization for the federally mandated Protection and Advocacy Systems,<br><br>            Plaintiffs,<br><br>    v.<br><br>JILMA MENESES, in her official capacity as Acting Secretary of the Washington State Department of Health and Human Services; and SUSAN BIRCH, in her official capacity as Director of the Washington State Health Care Authority,<br><br>            Defendants. | CASE NO. 3:22-cv-05651-RJB<br><br>ORDER ON MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT |

21

22

23

24

    This matter comes before the Court on the Plaintiffs' Motion for Leave to File First

Amended Complaint.  Dkt. 76.  The Court has considered the pleadings filed regarding the

motion, including the proposed amended complaint (Dkt. 76-1) and the remaining file.

ORDER ON MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - 1

The Plaintiffs in this case seek declaratory and injunctive relief regarding The Rainier School ("Rainier"), a state-run, residential facility for people with intellectual and developmental disabilities.  Dkt. 1.  The Plaintiffs contend that it is a dangerous place to live and fails to provide for the health and safety of its residents.  *Id.*  The Plaintiffs bring claims for violations of their Fourteenth Amendment due process rights (pursuant to 42 U.S.C. § 1983), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et. seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.  *Id.*

In the instant motion to amend the Complaint, the Plaintiffs seek to remove Plaintiff G.G. and his legal guardian, A.G., as parties and remove Plaintiffs' WLAD claim.  Dkt. 76.

This portion of the motion (Dkt. 76) should be denied as moot.  On November 1, 2022, the Court granted, in part, and denied, in part, the Defendants' motion to dismiss.  Dkt. 72.  That order dismissed Plaintiff G.G. and his legal guardian, A.G., for lack of standing and dismissed Plaintiffs' WLAD claim as barred by the Eleventh Amendment.  *Id.*  No further analysis is required on the motion to amend the Complaint to remove these parties and the WLAD claim.

The motion to amend the Complaint also seeks to establish Plaintiff Disability Rights Washington's associational standing to bring claims on behalf of its constituents at Rainier's Intermediate Care Facilities, and to clarify the Plaintiffs' due process claims, and claims for violations of the ADA and the RA.  Dkt. 76.  For the reasons provided below, this portion of the motion (Dkt. 76) should be denied, in part, and granted, in part.

## I.    FACTS AND PROCEDURAL HISTORY

### A.  FACTS

1    According to the proposed amended complaint, Rainier is one of four Residential

2  Habilitation Centers ("residential centers") established by the State.  Dkt. 76-1 at 12.  The

3  purpose of a residential center is "[t]o provide for those persons who are exceptional in their

4  needs for care, treatment, and education by reason of developmental disabilities . . . and to ensure

5  a comprehensive program for the education, guidance, care, treatment, and rehabilitation of all

6  persons admitted . . ." RCW § 71A.20.010(1).  They primarily serve adults and can only serve

7  those under 21 when "there is no service options available in the community . . . such admission

8  is limited to . . . short term respite or crisis stabilization services."  RCW § 71A.20.010(2).

9  Defendant Meneses operates the residential centers through the Developmental Disabilities

10  Administration. Dkt. 76-1 at 12.

11    Portions of residential centers may be licensed as an intermediate care facility for individuals

12  with intellectual and developmental disabilities ("intermediate care facility") or as a skilled

13  nursing facility.  Dkt. 76-1 at 13.  Intermediate care facilities and skilled nursing facilities "must

14  be certified to be funded as Medicaid State Plan Services."  *Id.*  To maintain their certification,

15  the residential centers must comply with federal conditions of participation.  *Id.*  State agencies

16  must survey intermediate care facilities every 15 months for compliance.  *Id.*  When an

17  intermediate care facility is found to be out of compliance, the state Medicaid agency may put

18  the facility on a Denial of Payment for New Admissions instead of terminating the facilities'

19  certification.  *Id.*  If the intermediate care facility cannot come into compliance with the federal

20  requirements within 11 months, the state Medicaid agency must terminate the facility's

21  certification. *Id.* at 14 (*citing* 42 C.F.R. 442.117(a)(2)).  Defendant Susan Birch is responsible for

22  Medicaid licenses for both intermediate care facilities and skilled nursing facilities.  *Id.* at 13.

23

24

1  Two units of Rainier are licensed as intermediate care facilities.  Dkt. 76-1 at 15.  Rainier
2  also includes cottages, some of which are not certified as an intermediate care facility, skilled
3  nursing facility, or otherwise licensed as a long-term care setting.  *Id.*  Plaintiff A.M. lives at one
4  such cottage, Klamath Cottage.  *Id.*  Medicaid funds are alleged to pay for the medical and
5  behavioral health care and vocational supports that Plaintiff A.M., and the other residents of this
6  cottage, receive.  *Id.*

7  As Acting Secretary of DSHS, Defendant Meneses has "'custody of all residents of the
8  [residential centers] and control of the medical, educational, therapeutic and dietetic treatment of
9  all residents . . .'"  *Id.* at 16 (*quoting* RCW 71A.20.050(2)).  If a resident desires to leave a
10 residential center and the DSHS Secretary believes that a departure "may be harmful to the
11 resident," the Secretary may hold a resident for a period not to exceed 48 hours "in order to
12 consult with the person's legal representative."  RCW 71A.20.140(1).  The proposed amended
13 complaint alleges that residents "have reported that they have been physically stopped and
14 returned to the facility upon leaving the school grounds."  Dkt. 76-1 at 16.

15 The state's Developmental Disabilities Administration places residents at Rainier "due to the
16 complexity of their support needs;" some enter the facility "because there were no other
17 available service-options to meet their assessed needs."  *Id.* at 15-16.  Rainier serves around 120
18 individuals with developmental disabilities in its two intermediate care facility units;
19 approximately 86 of whom also have co-occurring behavioral or mental health diagnoses.  *Id.* at
20 14-16.  There are approximately six people who live at either Klamath Cottage, at least one of
21 whom (Plaintiff A.M.) has co-occurring behavioral or mental health diagnoses.  *Id.* at 25.

22 According to the proposed amended complaint, Rainier alleges it provides:

23 a.  Medical, dental and nursing care;

24

b. Social and psychological services;

c. Occupational therapy, physical therapy and speech therapy evaluations, treatment, and adaptive equipment;

d. Vocational training and employment;

e. Recreation facilities; and

f. Nutrition and dietary services, including modified textures and therapeutic diets.

*Id.* at 14-15.  The proposed amended complaint alleges that "many" of the residents have indicated that they do not want to live at Rainier for long-term care.  *Id.* at 16.

The proposed amended complaint alleges that there is inadequate direct care staff at Rainier (with over 90 vacancies for direct care staff) and professional staff (with only one licensed psychologist) at present.  Dkt. 76-1 at 17.  This understaffing is alleged to risk harm to residents.  *Id.*

The proposed amended complaint also alleges that Rainier has a history of failing to meet federal regulatory requirements for health and safety violations.  *Id.*  For example, it contends that Rainier's two intermediate care facility units are on Denial of Payment for New Admissions status and cannot receive any new admissions.  *Id.* at 18-20.  It points out that in February of 2020, state surveyors issued an "Immediate Jeopardy" finding after a resident disappeared from the facility; Rainier failed to correct the cause for months and another "Immediate Jeopardy" finding was made after another resident left the facility.  *Id.* at 19-21.  The proposed amended complaint also notes that as recently as June of 2022, Rainier has been found out of compliance with federal regulations in several key areas, including governing body and management; client protections; health care services; and active treatment services.  *Id.* at 21-23.  For example, it alleges that a failure to train staff has resulted in resident deaths and serious injuries, including a

resident's eye loss.  *Id.* at 21-23.  The proposed amended complaint maintains that the failure to correct deficient practices harms or creates a risk of harm to the residents.  *Id.* at 21-24.

According to the proposed amended complaint, the Klamath Cottage was created in April of 2020 in response to the COVID-19 pandemic. Dkt. 76-1 at 24.  It is not a licensed as long-term care facility.  *Id.*  It is not subject to the same surveyor oversight and are not required to provide the level of services that are available in Rainier's two intermediate care facility units. *Id.*  Staff from the Medicaid-funded intermediate care facility units work at the cottage.  *Id.* There are approximately six people who live at the cottage, including Plaintiff A.M.  *Id.* at 25. Three have lived in one of the cottages for over one year.  *Id.*

The proposed amended complaint maintains that the State does not provide effective oversight to Rainier and continues to use it (including admission of new residents) "despite knowing of its dangerousness." Dkt. 76-1 at 25-26.  It alleges that the Defendants know that Rainier repeatedly submits insufficient corrective action plans.  *Id.* at 26.  The proposed amended complaint contends that the Defendants know that there is a persistent staffing shortage and that a state survey agency has recommended termination of the intermediate care facility certifications at Rainier.  *Id.*  It maintains that the Defendants know that the cottage is not certified or licensed long-term care facility subject to federal and state regulatory oversight.  *Id.* The proposed amended complaint alleges that the Defendants "know of the dangerous, systemic deficiencies at Rainier School, including recurring incidents of death and serious harm to residents."  *Id.* at 25.  It asserts that Defendant Meneses continues to use Rainier School to serve individuals with developmental disabilities and Defendant Birch continues to provide Medicaid funding to Rainier's two intermediate care facility units.  *Id*. at 26.

The proposed amended complaint also contends that the State does not "have a system of services for individuals with developmental disabilities that effectively provides crisis stabilization and behavior support services such that [Developmental Disabilities Administration] clients can avoid admission to Rainier." Dkt. 76-1 at 26.

In the request for relief, the proposed amended complaint seeks a declaration that the Defendants' "failure to respond to known deficiencies at Rainier School and failure to implement an adequate system for ensuring availability of safe and effective services results in harm to the Plaintiffs, or places them at risk of harm," and violates the Fourteenth Amendment, Title II of the ADA, RA and WLAD. Dkt. 76-1 at 44. It seeks an order enjoining the Defendants from continued violations of those laws and an "order appropriately tailored remedies directed at Defendants to ensure future compliance with their obligations to Plaintiffs" including:

a. End the practice of admitting any new residents, including re-admitting returning residents, to Rainier School;

b. Promptly discharge, with appropriate planning and transition supports, Plaintiff A.M. to an alternative service setting that can meet her assessed needs and are in alignment with her choice for service setting and geographic location;

c. Require that Defendants contract with an independent consultant to monitor the provision of safe and adequate services to individuals who remain in Rainier School's custodial care and monitor the discharge and transition planning for those residents who choose to move to a new service setting;

d. Require that Defendants promptly discharge, with appropriate planning and support, all residents of Rainier School who choose to move and ensure that these individuals are discharged to a service setting that meets their assessed needs and is in alignment with the individual's choice of service type and geographic location;

e. Require that Defendants provide new assessments and care plans for each remaining resident of Rainier School and ensure that all their needs can be fully and safely met with the existing facility staff, skills, training, and oversight;

f. Require that Defendants contract with an independent consultant to conduct an expert study of (i) deficiencies in the crisis stabilization services and residential

1

2

supports for clients of [the Developmental Disabilities Administration] with complex behaviors and co-occurring behavioral health diagnoses and (ii) systemic improvements needed to end or reduce DSHS's reliance on Rainier School as a residential placement option;

3

4

g. Require Defendants to correct the deficiencies and implement the strategies identified by the study.

5

*Id.* at 44-46.  The Plaintiffs also seek attorneys' fees and costs.  *Id.* at 46.

6

7

The Defendants oppose the motion.  Dkt. 80.  The Plaintiffs filed a reply (Dkt. 81) and the motion is ripe for review.

8

### II.    DISCUSSION

9

### A.  STANDARD ON MOTION FOR LEAVE TO AMEND

10

11

12

13

14

Under Fed. R. Civ. P. 15 (a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  A motion to amend under Rule 15 (a)(2), "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party."  *Chudacoff v. University Medical Center of Southern Nevada,* 649 F.3d 1143 (9th Cir. 2011).

15

16

17

The Defendants contend that the motion for leave to amend the Complaint should be denied because the proposed amendments seeking to establish associational standing and to clarify Plaintiffs' claims are futile.  Dkt. 80.

18

19

20

21

22

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient."  *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209 (9th Cir. 1988), *overruled on other grounds*.  The test to determine the sufficiency of a proposed amendment is the same as the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(1) or 12(b)(6).  *See Id.*

23

24

ORDER ON MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - 8

A complaint must be dismissed under Rule 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962).  When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983).  A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  Therefore, plaintiff bears the burden of proving the existence of subject matter jurisdiction.  *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

Fed. R. Civ. P. 12(b)(6) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550

1    U.S. 544, 554-55 (2007) (*internal citations omitted*).  "Factual allegations must be enough to

2    raise a right to relief above the speculative level, on the assumption that all the allegations in the

3    complaint are true (even if doubtful in fact)."  *Id*. at 555.  The complaint must allege "enough

4    facts to state a claim to relief that is plausible on its face."  *Id*. at 547.

5            Each of the Plaintiffs' proposed areas of amendment: Disability Rights Washington's

6    associational standing, clarification of claims for due process, the ADA and RA will now be

7    addressed.

8        **B.  MOTION TO AMEND TO ADD FACTS TO ESTABLISH DISABILITY**
           **RIGHTS WASHINGTON'S ASSOCIATIONAL STANDING**

9

10           Article III of the U.S. Constitution "limits federal judicial power to 'Cases' and

11   'Controversies.'"  *Van Patten v. Vertical Fitness GRP., LLC* 847 F.3d 1037, 1041 (9th Cir.

12   2017).  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of

13   Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Navajo Nation v. Dep't of the*

14   *Interior*, 876 F.3d 1144, 1160 (9th Cir. 2017).  "At an irreducible constitutional minimum,

15   standing requires the party asserting the existence of federal court jurisdiction to establish three

16   elements: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent;

17   (2) causation; and (3) a likelihood that a favorable decision will redress the injury."  *Wolfson v.*

18   *Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010)(*citing Lujan,* at 560-61).  "Apart from this,

19   standing for injunctive relief requires that a plaintiff show a real and immediate threat of

20   repeated injury."  *Updike v. Multnomah Cnty*., 870 F.3d 939, 947 (9th Cir. 2017)(*internal*

21   *quotation marks and citations omitted*).

22           "An association or organization can sue based on injuries to itself or to its members."  *Am.*

23   *Unites for Kids v. Rousseau,* 985 F.3d 1075, 1096 (9th Cir. 2021)(*internal citation omitted*).

24

1    In the November 1, 2022 order granting, in part, and denying, in part, the Defendants'

2   motion to dismiss, the Court found that Plaintiff A.M. and the other residents at Rainer are

3   members of Disability Rights Washington.  Dkt. 72 at 11-12.  The allegations in the proposed

4   amended complaint do not change this finding.  It is adopted here.

5    An organization has associational standing to sue on behalf of its members when: "(a) its

6   members would otherwise have standing to sue in their own right; (b) the interests it seeks to

7   protect are germane to the organization's purpose; and (c) neither the claim asserted nor the

8   relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash.*

9   *State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Rousseau* at 1096.  Although the first

10  two requirements are constitutional in nature, the third is prudential and does not apply here to

11  advocacy organizations such as Disability Rights Washington.  *Oregon Advocacy Ctr. v. Mink*,

12  322 F.3d 1101, 1109-1113 (9th Cir. 2003).

13   The November 1, 2022 order further held that Disability Rights Washington

14  demonstrated that it had associational standing to bring claims on behalf of its member

15  constituents at the Klamath Cottage.  Dkt. 72 at 12-13.  It found that Disability Rights

16  Washington had not shown that it had associational standing to bring claims on behalf of

17  residents of the intermediate care facility units of Rainer because it did not point to an injury

18  leading to that member's standing to sue in their own right.  *Id.* at 12.

19   In the proposed amended complaint, the Plaintiffs add allegations related to injuries and

20  risks to members of the Rainer intermediate care facility units.  Dkt. 76-1 at 35.  Those

21  allegations include that:

22   In February 2020, a Disability Rights Washington constituent who was a resident
     of [one of the intermediate care facility units] disappeared from Rainier School.

23   This resident was never found and he was declared deceased. Disability Rights
     Washington's investigation found that the resident had a known and recent history

24

ORDER ON MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - 11

of elopement behavior at Rainier School prior to his disappearance and death. State regulators found that Rainier School had failed to provide adequate staffing and supervision for the resident despite his known history, and that other current residents of Rainier School with similar known elopement histories, not only the resident that died, were at serious risk of immediate harm due to inadequate staffing and supervision. . .

In May 2021, a Disability Rights Washington constituent who is a resident of [one of the intermediate care facility units] was hospitalized after she ingested cleaning fluid left in an unlocked cupboard. Disability Rights Washington's investigation revealed that this individual had a known history of Pica, a condition that involves eating inedible items, that was identified upon her admission to Rainier School in 2021. The individual swallowed a light bulb and drank cleaning fluid within the first 4 months in Rainier School's care and continues to be at serious risk of harm while in Rainier School's care due to inadequate supervision and support and the facility's failure to provide a safe living environment. . .

In December 2021, a Disability Rights Washington constituent who was a resident of [one of the intermediate care facility units] choked on food and died. . . . [T]he individual had a documented history of being at risk of choking. . . . In February 2021, the individual underwent a communication assessment that resulted in a recommendation that he undergo a swallow study to assess the extent of the choking risk and provide safety recommendation. Rainier School staff decided not to follow the recommendation to seek a swallow study. The individual choked on food and died at his cottage at Rainier School in December 2021. State regulators determined that the many Rainier School residents with a similar history of similar behaviors were at serious risk of harm due to the facility's failure to fully assess and reasonably address the needs of residents at risk of choking. . .


In June 2022, a Disability Rights Washington constituent who was a resident of [one of the intermediate care facility units]  underwent an emergency surgery to remove his eye after Rainier School staff failed to properly treat his eye infection. . .

Dkt. 76-1 at 35-38.  These allegations are sufficient to confer associational standing on Disability Rights Washington for the Plaintiffs' claims under the ADA and RA.  These Disability Rights Washington member constituents have asserted an injuries in fact that are concrete and particularized and actual or imminent under the ADA and RA.  They have demonstrated that Defendants in their official capacities caused their injuries.  There is a sufficient showing that a

1    favorable decision will address the alleged injuries.  Lastly, they have shown a "real and

2    immediate threat of repeated injury."  *Updike* at 947.

3         Because the due process claim should be dismissed for failure to state a claim, this

4    opinion will not reach whether Disability Rights Washington has associational standing to bring

5    that claim.

6    **C.  MOTION TO AMEND TO CLARIFY DUE PROCESS CLAIM**

7         The motion for leave to amend the Complaint to try to plead facts in support of a due

8    process claim (Dkt. 76) should be denied.  As was the case in the Complaint, the Plaintiffs have

9    not alleged sufficient facts to support this claim in the proposed amended complaint.

10        The Plaintiffs again maintain that by virtue of their special relationship with the State,

11   that the State has an affirmative obligation to ensure their due process rights are not violated and

12   that the State has failed to meet its obligations.  In the alternative, the Plaintiff contend that the

13   State has directly violated their due process rights.  Each will be considered below.

14              1.  Special-Relationship Exception

15        A state's failure to protect due process interests does not violate the Fourteenth

16   Amendment unless one of two exceptions apply:  the special-relationship exception or the state-

17   created danger exception.  *Campbell v. State of Washington Dep't of Soc. & Health Servs.*, 671

18   F.3d 837, 843 (9th Cir. 2011); *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189,

19   197 (1989)(due process clause does not generally impose an affirmative obligation on the State

20   to ensure that due process interests "do not come to harm by other means"). The state-created

21   danger exception is not alleged to apply here.

22        The special-relationship exception to the general rule that the Due Process Clause does

23   not guarantee a right to governmental aid "applies when the state takes a person into its custody

24

1  and holds [them] there against [their] will."  *Patel v. Kent School Dist.,* 648 F.3d 965, 972 (9th

2  Cir. 2011)(*internal quotation marks and citations omitted*).  "The types of custody triggering the

3  exception are incarceration, institutionalization, or other similar restraint of personal liberty."  *Id.*

4  "[T]he state's affirmative duty to protect arises from the limitation the state has imposed on the

5  person's freedom to act for himself; the duty does not arise from the State's knowledge of the

6  individual's predicament or from the State's expressions of intent to help."  *Campbell* at 843.

7      The Plaintiffs have failed to allege sufficient facts to conclude that the special-

8  relationship exception applies.  The Plaintiffs allege that they are in the custody of the State and

9  so the exception applies.  "Mere custody . . . will not support a 'special relationship' claim where

10  a person voluntarily resides in a state facility under its custodial rules."  *Campbell* at 843.  While

11  the Plaintiffs allege that some of the Rainer residents have nowhere else to go, this does not

12  transform the state's willingness to care for them into a "limitation that the state has imposed on

13  the person's freedom to act for himself."  *Campbell* at 843.

14      The Plaintiffs contend that residents at Rainier may not always be at Rainier voluntarily,

15  pointing to the 48-hour hold found in RCW 71A.20.140(1), which provides that if a resident

16  desires to leave a residential center and the DSHS Secretary believes that a departure "may be

17  harmful to the resident," the Secretary may hold a resident for a period not to exceed 48 hours

18  "in order to consult with the person's legal representative."  The Plaintiffs fail to allege that

19  anyone at Rainier has suffered any injury as a result of the 48-hour hold.  The 48-hour

20  emergency hold is not sufficient to support a special relationship claim.

21      The Plaintiffs contend that their placement, while initially voluntary, became custodial in

22  nature over time.  The Plaintiffs argue that their placement became custodial in nature because of

23  the use or threat of the use of physical or chemical restraints.  This is not sufficient.  First, as to

24

1    some of the residents at Rainier, physical or chemical restraints are part of the reason they

2    entered Rainier.  "The state's performance of the very acts for which an individual voluntarily

3    enters state care does not transform the custodial relationship into an involuntary one."

4    *Campbell* at 843.  Second, the Plaintiffs fail to allege that Rainier threatens to physically or

5    chemically restrain any of the residents to force them to remain at the facility.  They have failed

6    to allege facts that would transform their voluntary agreement to remain at Rainier into an

7    involuntary one.  The Plaintiffs have not stated a plausible claim for relief based on the special-

8    relationship exception.

9                          2.   Direct Action

10       "Substantive due process protects individuals from arbitrary deprivation of their liberty

11   by government."  *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1110 (9th Cir.

12   2010).  "The threshold question is whether the behavior of the governmental officer is so

13   egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

14   *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020)(*internal quotation marks and

15   citations omitted*).  The relevant question here is whether the "shock the conscience" standard is

16   met here with the Plaintiff's allegations of the State's deliberate indifference regarding their

17   policy and practices.

18       The Plaintiffs have not alleged sufficient facts to plausibly allege a substantive due

19   process claim in the proposed amended complaint.  Their allegations of deliberate indifference

20   do not rise to the level of "shocking the conscience."  *Vazquez* at 1162.  While they allege

21   several failures at Rainer, they fail to allege sufficient facts from which to conclude that these

22   failures rise to a constitutional violation.  The motion to amend the Complaint to replead a

23   Fourteenth Amendment claim should be denied.

24

1

### D.  MOTION TO AMEND TO CLARIFY ADA AND RA CLAIMS

2

Title II of the ADA provides, in relevant part, that "no qualified individual with a

3 disability shall, by reason of such disability, be excluded from participation in or be denied the

4 benefits of the services, programs, or activities of a public entity, or be subjected to

5 discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the RA "similarly

6 prohibits disability discrimination by recipients of federal funds."  *Payan v. Los Angeles Cmty*.

7 *Coll. Dist*., 11 F.4th 729, 737 (9th Cir. 2021).  Title II of the ADA and the RA "are interpreted

8 coextensively because there is no significant difference in the analysis of rights and obligations

9 created by the two Acts" aside from the RA's requirement that the program receive federal

10 funds, which is not at issue here.  *Id.*

11

To prove a violation of Title II of the ADA or of the RA, a plaintiff must show that: (1)

12 they are a "qualified individual with a disability"; (2) they were "either excluded from

13 participation in or denied the benefits of a public entity's services, programs, or activities, or was

14 otherwise discriminated against by the public entity;" and (3) "such exclusion, denial of benefits,

15 or discrimination was by reason of [their] disability."  *Duvall v. County of Kitsap,* 260 F.3d

16 1124, 1135 (9th Cir. 2001)(*citing Weinreich v. Los Angeles County Metropolitan Transp. Auth.,*

17 114 F.3d 976, 978 (9th Cir. 1997)).

18

The allegations in the proposed amended complaint are sufficient to state a claim under

19 the ADA and RA.  In the November 1, 2022 order granting, in part and denying, in part, the

20 Defendants' motion to dismiss, the Court found that the Complaint stated a claim for violations

21 of the ADA and RA as to A.M. and the other cottage residents.  Dkt. 72.  The proposed amended

22 complaint did not change those allegations and that ruling is unchanged.

23

24

The proposed amended complaint alleges sufficient facts to state a claim for violation of the ADA and RA for the residents of the intermediate care facility units.  It asserts the constituent members of Disability Rights Washington who live at Rainer are people with intellectual disabilities (Dkt. 76-1) thus meeting the first element.  The proposed amended complaint contends that the Defendants' policy of failing to properly staff the intermediate care facility units denies them the care they require.  *Id.*  Accordingly, they have pled that they been "excluded from participation in or denied the benefits of" the Developmental Disabilities Administration's "services, programs, or activities," or were "otherwise discriminated against" based on Defendants' policies.  Lastly, the Plaintiffs maintain that the only people at Rainer are people with severe disabilities.  *Id.*  They have adequately pled that "such exclusion, denial of benefits, or discrimination was by reason of [their] disability" because of the disparate impact on people with severe disabilities that resulted from the Defendants' policies at Rainer.  *Id.*

### E.  CONCLUSION

The Plaintiffs' motion for leave to file a first amended complaint (Dkt. 76) should be denied as moot, as to the removal of Plaintiff G.G. and his legal guardian, A.G., as parties and as to Plaintiffs' WLAD claim.  Those parties and the WLAD claim have already been dismissed.  The motion to amend to replead a claim for violation of due process should be denied.  The motion to amend should be granted in all other respects.  The Plaintiffs properly filed a proposed amended complaint (Dkt. 76-1) which marked the proposed changes.  The Plaintiffs should file a clean copy of the amended complaint within two weeks of this order that is in compliance with this order.

### III.   ORDER

It is **ORDERED** that:

- The Plaintiffs' Motion for Leave to File First Amended Complaint (Dkt. 76) **IS**:

    o **DENIED AS MOOT** as to the removal of Plaintiff G.G. and his legal

    guardian, A.G., as parties and as to Plaintiffs' WLAD claim;

    o **DENIED** as to the Plaintiffs' claim for due process; and

    o **GRANTED** in all other respects.

- A clean copy of the amended complaint, in compliance with this order, **SHALL**

    **BE FILED** within two weeks from the date of this order.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and

to any party appearing pro se at said party's last known address.

Dated this 15th day of December, 2022.

ROBERT J. BRYAN
United States District Judge

ORDER ON MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT - 18